## John H. Lewin vs. John Uzuber.

*Instructions to the Jury as to the legal Insufficiency of Evidence—Warrant of Arrest—Distinctions between Actions for Malicious Arrest, and for False Imprisonment.*

The power and duty of a Court in a proper case, to instruct the jury as to the legal insufficiency of evidence to prove a particular fact sought to be proved by it, has been too often determined to admit of further question or doubt.

A paper containing no command to arrest, but simply a recital of a charge made on oath by the affiant against certain named parties, is totally void on its face as a warrant of arrest, and affords no protection whatever, either to the constable who acted under it, or to the magistrate who issued it.

The distinction between an arrest by an officer under a warrant legally issued and coming to his hands in a lawful manner, and one made without warrant, or under process from a Court having no authority to issue it, is that in the one case the officer is protected; in the other he commits a trespass for which he and his abettors are liable in damages.

The action for false imprisonment is a suit for trespass, and that for malicious prosecution is an action on the case. The former can be maintained only when the arrest is made without legal process; and the latter when the process of the law has been perverted and improperly used without probable cause, and for a malicious purpose.

In malicious prosecution the officer issuing the process or making the arrest under it incurs no liability; the whole responsibility is upon the party procuring it   In false imprisonment, the arresting officer, and the party inducing the arrest, and the magistrate assuming to issue the unauthorized warrant, are all liable as joint trespassers.

In malicious prosecution, malice and want of probable cause must be alleged; in false imprisonment neither is a necessary averment, but probable cause may go in mitigation of damages, although not in bar of the action.

It is not any formal defect or irregularity, even though appearing on its face, that will be sufficient to vitiate the writ and render the magistrate or constable liable in damages for issuing it or acting under it. On the contrary, the defect must be so glaring and palpable that any person of ordinary intelligence by merely looking at and reading it, will at once pronounce it null and void, and of no effect as a warrant.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and IRVING, J.

*R. R. Boarman,* * *John I. Yellott,* and *Wm. P. Maulsby,* for the appellant.

*Alfred S. Niles,* and *Charles B. Roberts, Attorney-General,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This is an action for malicious prosecution. The declaration contains three counts. The first charges that the defendant on the 15th of January, 1880, falsely, maliciously and without any probable cause whatsoever caused the plaintiff to be arrested by a writ issued by Mordecai Alban, a justice of the peace, upon the charge of larceny, and that the justice, after an investigation of the charge, required the plaintiff to give bail for his appearance before the Circuit Court for Baltimore County, that he did give bail as required, and the charge and accusation were duly dismissed by the grand jury for said Court. The second and third differ from the first only in the statement of the termination of the prosecution, and in this

---

* Mr. Yellott, though present, did not participate in the argument of the case.

respect, the second avers that though nine successive terms of Court have passed since he entered into the recognizance, yet no action whatever has been taken in his case by the grand jury, while the third avers that nine successive terms of Court passed after the plaintiff was required to enter into the recognizance without the grand jury taking any action whatever in his case, and that this omission to act on the part of the grand jury, was set forth by the plaintiff in a petition to the Court, and that on this petition the Court passed an order dated the 7th of July, 1882, whereby he was discharged from said recognizance.

The case was tried before a jury upon issue joined on the plea of not guilty, and the result was a verdict and judgment for the plaintiff, from which the defendant has appealed. In the course of the trial eleven exceptions were taken to the rulings of the Court, upon questions of evidence, and fifteen prayers were offered by the plaintiff and seventeen by the defendant. Some of which on each side were granted by the Court, and others rejected; but in the view we have taken of the case, it is not necessary to review these several rulings in detail.

The general features of the case are these:—A controversy arose between the parties in reference to a boundary line between their lands. The defendant had been for many years the owner of a farm, and the plaintiff recently bought land adjoining thereto on one side. Between them was an old fence which had been standing in its then location for nearly sixty years. After his purchase the plaintiff, supposing that his land extended up to this old fence, cut some trees along its line and on his side of the fence. The defendant contended that the true line of his land was some eight or ten feet beyond and outside of this fence, and sued the plaintiff in trespass before a magistrate for this cutting. To this suit the plaintiff appeared, and made oath that the land on which the cutting was done belonged to him, and this, of course,

ousted the jurisdiction of the magistrate and the case was dropped. After this an attempt was made at a compromise by having the line run and located by the county surveyor. This was done and the county surveyor, by his running, located the line according to the claim of the defendant. The latter insisted that this was a final settlement of the dispute and that the plaintiff had agreed to abide by it, but the plaintiff denied that he had ever made any such agreement, and being dissatisfied with this location, called in another surveyor, who by his running located the line differently and nearly in the line of the old fence. The defendant then moved the fence out to the line located by the county surveyor, and the plaintiff shortly afterwards proceeded to move it back again to the line as located by his surveyor. At this stage of the quarrel the defendant took the step which brought about this action. He went to a magistrate and on oath charged the plaintiff and three of his employés " with stealing and taking his rails and land, and destroying his young timber," and thereupon the magistrate issued what the plaintiff insists was a *warrant*, under which he was arrested by a constable, and was required to, and did, enter into a recognizance in the sum of $500, with security, for his appearance to the next term of the Court.

One of the questions presented by the exception is, was there any evidence offered at the trial legally sufficient to authorize the jury to find that the magistrate ever issued or signed any paper which the law can recognize as a *warrant* or *writ* for the arrest of the plaintiff? This is a question vital to the case, for we take it to be clear that the plaintiff, though he may have a remedy against all parties concerned therein, for the wrong done him by this arrest, in an action of trespass for a false imprisonment, cannot maintain this action on the case for a malicious prosecution, without proving the averment of his declaration, that the defendant caused him " to be arrested by a *writ*

issued by" the magistrate. What then is the proof in the record on this subject? After the recognizance was taken the magistrate transmitted all the papers in the case to the clerk of the Circuit Court, but these appear to have been lost and the originals were not produced, so that secondary evidence of the contents of the alleged warrant had to be resorted to. The magistrate who appears to have testified before the loss of the papers was proved, simply says in general terms, that he issued a warrant against the plaintiff directed to Nathaniel Spicer, constable, and that the charge in it was "for cutting and destroying timber, taking or stealing rails and stealing land." He also says, that William Davis, an ex-magistrate who lived in the neighborhood, filled the warrant up and he, the witness, signed it. The entries on the recognizance docket do not mention a warrant, but merely state that the charge was "larceny." The constable also states in the same general terms, that he received a warrant for the arrest of the plaintiff and that the charge in it according to his recollection, was for "cutting down young timber and stealing fence rails." But when the plaintiff came to prove his discharge from the recognizance, he, himself, introduced very clear and satisfactory secondary evidence of the entire contents of this paper. In his petition to the Court for the discharge, he alleges that he was arrested under a writ issued by Mordecai Alban, a justice of the peace, upon the charge of larceny, "as will more fully appear by a *copy of said writ*, (the original having been lost,) which is hereto annexed, marked Exhibit A," and this exhibit, after the formal address to the constable, reads as follows:—

"Whereas complaint hath been made before me, the subscriber, one of the justices of the peace of the said State in and for said county, upon the information and oath of John H. Lewin, who charges John Uzuber, Anthony Shaver, Fred. Florstedt and Granville Myers, with

stealing and taking his rails and land and destroying his young timber.

"MORDECAI ALBAN, J. P.."

The defendant then offered evidence tending to prove, that when he went to the magistrate and swore to the charge, no other paper was written or prepared by the magistrate, or Davis, or any one else, than that of which this Exhibit A is a copy, and ·that the magistrate did not then or at any other time, sign or issue any other warrant or writ against the plaintiff on the information or oath of the defendant, that this was the only paper issued, and .that when a warrant has been spoken of by the witnesses, this is the paper which they have spoken of as a warrant. On cross-examination of defendant's witnesses, the plaintiff proved that the paper which Davis wrote or filled up, and which the magistrate signed, was on a printed or blank form.

We have thus set out all the testimony in the record on this point, and a careful consideration of the same has convinced us there is nothing in it legally sufficient to justify a jury in reaching any other conclusion, than that the paper of which Exhibit A purports to be a copy, was in fact, the paper and the only paper which was issued by the magistrate as and for a warrant or writ for the arrest of the plaintiff; and we are therefore of opinion, the jury should have been so instructed by the granting of the defendant's eighth prayer, and that it was error to refuse that instruction. The power and duty of a Court, in a proper case, to instruct a jury as to the legal insufficiency of evidence to prove a particular fact sought to be proved by it, has been too often determined by this Court to admit of further question or doubt, and we are clearly of opinion this is a case in which the power should have been exercised.

Taking then this as the paper which was signed by the magistrate and delivered to the constable, it is impossible

for the Court to recognize it as a warrant or writ. It contains no command to arrest, and is simply the recital of a charge made on oath by the defendant against certain named parties. As a warrant or writ for the arrest of these parties, or any one else, it is totally void on its face, and affords no protection whatever either to the constable who acted under it or the magistrate who issued it. In *Grumon vs. Raymond*, 1 *Conn.*, 40, a case cited and approved by this Court in *Campbell vs. Webb*, 11 *Md.*, 482, there was a search-warrant which commanded the officer to search the premises of certain named parties for two stolen bags, and also to search "other suspected places, houses, stores, or barns" in the town of Welton, "for said bags, and also to search such persons as are suspected; and if you shall find said bags and the person suspected, you are to take said bags, and arrest the person suspected and him have forthwith before me." A party who was arrested under this writ brought an action of trespass *vi et armis* against both the magistrate and the constable, and both were held liable. The Court, as might have been expected, denounced such a writ in very vigorous terms as wholly illegal and void on its face; and in speaking of the liability of the constable, laid down the law, which was approved by our predecessors thus: "Although an officer is not always liable when he executes an improper warrant, yet this is in a case where it does not appear on the face of the warrant that it is illegal. It may, for anything that the officer can discover, be legal; and in such case it is his duty to obey and to presume that it is lawful. But an officer is bound to know the law, and when the warrant on the face of it appears to be illegal, and he executes it, he is liable to the person arrested." In that case the warrant commanded the arrest of any and every suspected party, while in this it commands the arrest of no one. The illegality of it as a writ is much more apparent upon the face of this paper than it was

upon that, and if the warrant afforded no protection either to the officer or magistrate in that case, this paper can certainly afford them none in this. That being so, it follows very clearly, we think, that the plaintiff cannot maintain this action. The distinction between an arrest by an officer under a warrant legally issued and coming to his hands in a lawful manner, and one made without warrant, or under process from a Court having no authority to issue it, is clearly drawn. Under the former he can commit no trespass by executing it according to its command. If he arrests the person he is ordered by it to arrest, he is fully protected, and no action for trespass lies against him for this discharge of his duty. If, on the contrary, he seizes the person of another, without warrant, or with one palpably illegal, or issued without the authority of law, he commits a trespass for which he and his abettors are liable in damages. Hence the distinction at common law between the action for false imprisonment and that for malicious prosecution. The former is a suit for trespass, and the latter an action on the case. The first can be maintained only when the arrest is made without legal process; and the latter, when the process of the law has been perverted and improperly used without probable cause and for a malicious purpose. In both cases the injured party can recover damages for the wrong done him, but he must proceed in a different way against different parties, and make different allegations in the one case from what he does in the other. In malicious prosecution the officer issuing the process or making the arrest under it, incurs no liability; the whole responsibility is upon the party procuring it. In false imprisonment, the arresting officer, and the party inducing the arrest, and the magistrate assuming to issue the unauthorized warrant, are all liable as joint trespassers. In the former, malice and want of probable cause must be alleged; in the latter, neither is a necessary

Lewin *vs.* Uzuber.

averment, but probable cause may go in mitigation of damages, though not in bar of the action. *Hubbard vs. Lord*, 59 *Texas Rep.*, 384. It must, however, be distinctly understood, that in what we have thus said in regard to the invalidity of this paper as a warrant, we do not hold that any formal defect or irregularity, even though appearing on its face, will be sufficient to vitiate such a writ, and render the magistrate or constable liable in damages for issuing it or acting under it. On the contrary, the defect must be so glaring and palpable that any person of ordinary intelligence, by merely looking at and reading it, will at once pronounce it null and void, and of no effect as a warrant. Such is clearly the character of the defect in this instrument. Any one, even of the plainest understanding, can see at once that a paper which contains no precept or mandate to arrest any one is not a writ authorizing an arrest.

These are our views as to the law, and the evidence on this point as it appears in the record, and it follows that, as the plaintiff has offered no legally sufficient evidence of an arrest under a warrant as alleged in his declaration, the defendant's second prayer to that effect ought to have been granted. As this goes to the root of the case, and the right to maintain this action for a malicious prosecution, the consequence is that the judgment must be reversed and a new trial refused.

*Judgment reversed, and*
*new trial refused.*

(Decided 27th May, 1886.)