## GILBERT SMITH *vs.* SARAH V. BROWN.

*Malicious prosecution*: *defective warrant for arrest; when de-*
*fects do not affect liability of defendant in suit for dam-*
*ages. Chattel mortgages*: *removal with intent to de-*
*fraud. Declarations*: *clerical errors. Pray-*
*ers*: *inconsistent—; conceded prayers.*
*Evidence*: *inadmissible—; already*
*admitted without objection.*

Mere clerical errors in a declaration or in a record may be
overlooked. p. 245

For the defects in a warrant of arrest, on which is based an
action for malicious prosecution, to be such as to render the
warrant of no effect and thereby defeat the liability of the
defendant, they must be so glaring and palpable that any
person of ordinary intelligence. by merely looking at and
reading the warrant, will at once pronounce it null and void.
p. 246

Where such a warrant charged a party for illegally *"removing*
*from the city, hypothecating or secreting a piano valued at*
$325.00 *without first obtaining in writing the consent of the*
*mortgagor"* in Baltimore City, without the words *"with the*
*intent to defraud the mortgagee,"* etc., according to the lan-
guage of the statute, it was *held,* that the defect did not ren-
der the declaration null so as to prevent the liability of the
defendant for a malicious prosecution. p. 246

The justice of the peace had jurisdiction of both the subject-
matter and the person, and the liability of the defendant in
the suit for malicious prosecution was not prevented by rea-
son of the defects in the charge of the warrant under which
the plaintiff was arrested. p. 247

Where the defendant in a suit for malicious prosecution admits
that he swore out a warrant for the arrest of the plaintiff,

a prayer instructing the jury that there was no legally suffi-
cient evidence to prove that the defendant ever swore out
the warrant, etc., is erroneous. pp. 246-247

Probable cause is a mixed question of law and of fact; and
the jury should be instructed hypothetically as to what con-
stitutes probable cause, leaving to them to find the facts
embraced in the hypothesis. p. 247

In a suit for malicious prosecution, a prayer to instruct the
jury, that there is legally sufficient evidence of probable cause,
etc., does not leave the jury to find the existence of the facts
· relied on as constituting such probable cause, and is erroneous.
p. 247

Conceded prayers are the law of the case. p. 248

'Prayers inconsistent with conceded prayers are erroneous.
p. 248

In an action, for damages for malicious prosecution it is nec-
essary for the plaintiff to show that such suit had been dis-
missed. p. 249

When the answer of witnesses to a question that has been
objected to has already been given in evidence and adduced by
the party objecting, its admission is not reversible error.
p. 250

*Decided January 14th, 1913.*

Appeal from the Baltimore City Court (DAWKINS, J.).

The following are the prayers of the plaintiff and of the
defendant, together with the action of the Court upon each:

*Plaintiff's First Prayer.*—If the jury should find from
the evidence that the plaintiff was arrested in Baltimore
City on or about the 28th day of October, 1910, and taken
to the Western Police Station and kept in custody during
a part of that day and was released on bail for the action
of the Grand Jury, and that the Grand Jury on or about the
4th day of November, 1910, dismissed the charge against her,
and shall find that the defendant, Gilbert Smith, aided and
assisted in procuring the arrest and prosecution of the plain-
tiff under such circumstances as would not have induced a

reasonable and dispassionate man to have undertaken such prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary that said prosecution was malicious in law and their verdict may be for the plaintiff. (*Granted.*)

*Plaintiff's Second Prayer.*—If the jury should find from the evidence that the contract produced in evidence by the defendant and signed by the plaintiff contained a clause that the said Sarah. V. Brown would not attempt to remove the piano in question from 640 West Franklin street without the written consent of Gilbert Smith, and that the said Gilbert Smith knew that the said piano had been removed from 640 West Franklin street to various other places, if the jury should so find, and that the said Gilbert Smith continued to collect on account of said piano after its removal from 640 West Franklin street, if they should so find, and that no objection was made to the removal of the same by the said Gilbert Smith, if the jury should so find, then the said Gilbert Smith waived the clause in the contract hereinbefore mentioned concerning the removal of said piano from 640 West Franklin street, without the written consent of the said Gilbert Smith. (*Refused.*)

*Plaintiff's Third Prayer.*—If the jury should find from the evidence that the plaintiff was arrested in Baltimore City on or about the 28th day of October, 1910, and taken to the Western Police Station and kept in custody during a part of that day and was released on bail for the action of the Grand Jury, and that the Grand Jury on or about the 4th day of November, 1910, dismissed the charge against her, and that the defendant, Gilbert Smith, at said Western Police Station on the 28th day of October, 1910, heard the conversation directed to him by the witness, Mrs. Bull, if they should so find, to the effect that the plaintiff had given her on the evening of October 27th, 1910, ten dollars to take to the said Gilbert Smith to pay on account of said piano, if they should so find, and that she stated to the said Gilbert

Smith that she had the ten dollars and that she offered to pay the same to the said defendant, and that the plaintiff offered to pay the full amount claimed by the defendant, if they should so find, and that thereafter the defendant, Gilbert Smith, aided and assisted in the prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution from public motives, then the jury may infer in the absence of sufficient proof to satisfy them to the contrary that said prosecution was malicious in law and their verdict may be for the plaintiff. (*Refused.*)

*Plaintiff's Fourth Prayer.*—If the jury should find their verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity she has sustained in consequence of the defendant's wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful act. (*Conceded.*)

*Plaintiff's Fifth Prayer.*—The jury are instructed that probable cause is "such reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty." (*Conceded.*)

*Defendant's First Prayer.*—Defendant prays the Court to instruct the jury that the charge mentioned in the declaration is not a charge of a criminal offense, and even if proved, they must still find for the defendant. (*Refused.*)

*Defendant's Second Prayer.*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence in this case to prove that the defendant caused to be issued or procured a warrant for the arrest of the plaintiff charging her with a criminal offense and their verdict must be for the defendant. (*Refused.*)

*Defendant's Third Prayer.*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence to prove that the defendant ever swore out a war-

rant or caused or procured the arrest of the plaintiff for the offense charged in the declaration. (*Refused.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence in this case to prove that the charge contained in warrant mentioned in the evidence was ever ended, dismissed or abandoned and their verdict must be for the defendant. (*Refused.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury that there is legally sufficient evidence in this case that there was probable cause for procuring the warrant mentioned in this cause and causing the arrest of plaintiff as mentioned in the evidence. (*Refused.*)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury that the defendant was not actuated by malice in procuring the warrant mentioned in the testimony. (*Refused.*)

*Defendant's Seventh Prayer.*—Defendant prays the Court to instrucct the jury that if they shall find from the evidence that there was such reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious man in believing the accused to be guilty of the charge mentioned in the warrant, there was probable cause for causing said warrant to be issued and their verdict should be for the defendant. (*Granted.*)

*Defendant's Eighth Prayer.*—Defendant prays the Court to instruct the jury that if they shall find from the evidence that in causing the warrant mentioned in the evidence to be issued, he acted under advice of counsel, an attorney at law, after having laid before him fully and fairly all the facts in the case relative to the charge, that he knew, or by reasonable diligence might have known and that he believed such advice to be sound and without malice, then the defendant acted in good faith and was not actuated by malice in procuring said warrant. (*Granted.*)

*Defendant's Ninth Prayer.*—Defendant prays the Court to instruct the jury that if they shall find from the evidence

that the facts proven are too inconclusive to justify any rational mind in finding malice on the part of the defendant in prosecuting this case, then the jury should find for the defendant.   (*Refused.*)

*Defendant's Tenth Prayer.*—Defendant prays the Court to instruct the jury that there is no legally sufficient evidence to show that defendant ever prosecuted the charge mentioned in the recognizance, in evidence, before the Grand Jury. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Frank V. Rhodes,* for the appellant.

*J. Cookman Boyd,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an action for malicious prosecution brought by the appellee against the appellant.

The amended declaration charges that "on or about the 28th day of October, 1910, the defendant caused the plaintiff to be arrested and taken to one of the police stations in the City of Baltimore, where she was detained from about four o'clock in the morning of October 28th until about three o'clock in the afternoon of the same day, on the charge of unlawfully removing from the city, hypothecating or secreting one piano, value $325, without first obtaining in writing the consent of the mortgagor in Baltimore City, State of Maryland; that she was thereafter released on bail to await the action of the Grand Jury, and that the said charge against her was dismissed by the Grand Jury in the City of Baltimore on the 4th day of November, 1910; that the prosecution of the plaintiff by the defendant was falsely and maliciously made, and that the same was without probable cause; that as a result thereof the plaintiff was caused to suffer great personal inconvenience, physical torture, men-

tal anguish and great humiliation, and other great wrongs and injuries were by her thereby sustained."

To this declaration the defendant pleaded that he did not commit the wrong alleged, and upon the trial of the case the jury rendered a verdict for the plaintiff for the sum of one thousand dollars, upon which verdict a judgment in favor of the plaintiff was entered for that amount.

At the close of the testimony five prayers were offered by the plaintiff. Of these the first was granted, the second and third were rejected and the 4th and 5th were conceded. The defendant offered ten prayers; the first, second, third, fourth, fifth, sixth, ninth and tenth were rejected, and the seventh and eighth were granted. The defendant excepted to the ruling of the Court in "granting the plaintiff's second and third prayers" and to the rejection of his prayers above named. It was the first, and not the second and third prayers of the plaintiff, that was granted. Thus it was to the granted prayer of the plaintiff, and not to her rejected prayers (the second and third), that the defendant must have intended to except, and we will so consider his exception.

By the plaintiff's first prayer, the jury were instructed that, should they "find from the evidence that the plaintiff was arrested in Baltimore City on or about the 28th day of October, 1910, and taken to the Western Police Station and kept in custody during a part of that day and was released on bail for the action of the Grand Jury, and that the Grand Jury on or about the 4th day of November, 1910, dismissed the charge against her, and shall find that the defendant, Gilbert Smith, aided and assisted in procuring the arrest and prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary that said prosecution was malicious in law and their verdict may be for the plaintiff."

The jury, by the plaintiff's fourth prayer, a conceded prayer, were instructed that "should they find their verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case and award such damages as would not only compensate the plaintiff for the wrong and indignity she has sustained in consequence of the defendant's wrongful acts, but may also award exemplary and punitive damages as a punishment to the defendant for such wrongful act."

By the plaintiff's fifth prayer, also a conceded prayer, the jury were instructed that "probable cause is such reasonable ground of suspicion supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty."

By the defendant's first, second, third, fourth, fifth and sixth prayers the Court was asked to instruct the jury, either expressly or in effect, to find for the defendant, and thus to remove the case from the consideration of the jury.

By the granted prayers of the defendant the jury were instructed :

In the seventh, that should they "find from the evidence that there was such reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious man in believing the accused to be guilty of the charge mentioned in the warrant, there was probable cause for causing the said warrant to be issued, and their verdict should be for the defendant."

In the eighth prayer, that should they find "that in causing the warrant mentioned in evidence to be issued, he (the defendant) acted under advice of counsel, an attorney-at-law, after having laid before him fully and fairly all the facts in the case relative to the charge, that he knew, or by reasonable diligence might have known, and that he believed such advice to be sound and without malice, then the defendant acted in good faith and was not acuated by malice in procuring said warrant."

By the ninth prayer of the defendant the Court was asked to instruct the jury "that if they shall find from the evidence that the facts proved are too inconclusive to justify any rational mind in finding malice on the part of the defendant in prosecuting this case, then the jury should find for the defendant."

And in the defendant's tenth prayer the Court was asked to instruct the jury "that there is no legally sufficient evidence to show that the defendant ever prosecuted the charge mentioned in the recognizance, in evidence, before the Grand Jury."

During the progress of the trial two exceptions were taken to the admission of evidence and one to the action of the Court in permitting the plaintiff to amend the declaration. The last exception, however, was waived by the defendant.

It is evident that the offence alleged, in the declaration, to have been charged against the plaintiff, and upon which she is therein said to have been arrested, consists of an alleged violation by the plaintiff of section 166 of Article 27 of the Code (*Poe's*) of Public General Laws of Maryland, or at least it was so intended, although the offence under the statute may not have been fully and completely stated in said charge. The said section of the Code provides: "Any mortgagor of personal property in possession of the same, * * * who, * * * without the consent of the mortgagee or his assigns, first had and obtained in writing, * * * and *with the intent to defraud the mortgagee or his assigns, and to defeat his or their lien under said mortgage,* * * * shall remove any of the personal property so mortgaged * * * beyond the limits of the city or county where it was located when so mortgaged, * * * shall be deemed guilty of a misdemeanor," etc.

In the declaration as originally filed the charge there was for *"removing mortgaged property."* By the amendment thereto the words *"removing mortgaged property"* were stricken therefrom, and the following words were substituted

in lieu thereof: *"unlawful removing from the city, hypothe-cating or secreting one piano value $325 without first obtain-ing in writing the consent of the mortgagor."*

It will be observed that the charge, as it appears in the dec-laration, alleges that this property was removed without first obtaining in writing the consent of the *mortgagor* and not the *mortgagee.* · This error, no doubt, occurred in tran-scibing or printing the record, or if not, it is a mere clerical error, and we will so consider it. This amendment to the declaration is made from the language found in the recogni-zance offered in evidence by the plaintiff, wherein the word "mortgagee" is used, and no doubt it was so intended to be transcribed into the declaration.

It is contended by the defendant that the charge as it ap-pears in such amended declaration is not, as stated, a crimi-nal offense under the statute, and that because it is not this action should fail. It is upon this contention that the de-fendant predicates his first and second prayers; in the first of which the Court was asked to instruct the jury "that the charge mentioned in the declaration is not a charge of a criminal offence, and even if proved, they must still find for the defendant"; and in the second, the Court was asked to instruct the jury "that there is no legally sufficient evi-dence in this case to prove that the defendant caused to be issued or procured a warrant for the arrest of the plaintiff, charging her with a criminal offence, and their verdict must be for the defendant."

In the case of *Lewin v. Uzuber,* 65 Md. 341, an action for malicious prosecution, the question there raised, similar to the one presented in this case, involved the plaintiff's right of recovery under that form of action. The Court, in speak-ing of actions for false imprisonment and malicious prosecu-tion, said: "The former is a suit for trespass, and the latter an action on the case. The first can be maintained only when the arrest is made without legal process; and the latter, when the process of law has been perverted and improperly used

without probable cause and for a malicious purpose." The warrant in that case did not order or direct the officer to make the arrest, but merely contained a statement of the offence charged. The Court there held that it was impossible to recognize the paper as a warrant or writ. "It contains no command to arrest, and is simply the recital of a charge made on oath by the defendant against certain named parties," and thus held that it conferred no authority upon the officer to make the arrest. But in connection therewith the Court said: "It must, however, be distinctly understood, that in what we have thus said in regard to the invalidity of this paper as a warrant, we do not hold that any formal defect or irregularity, even though appearing on its face, will be sufficient to vitiate such a writ. On the contrary, the defect must be so glaring and palpable that any person of ordinary intelligence, by merely looking at and reading it, will at once pronounce it null and void, and of no effect as a warrant." *Dennis* v. *Ryan,* 65 N. Y. 388; *Potter* v. *Gjertsen,* 37 Minn. 386; *Castro* v. *De Uriarte,* 12 Fed. 258; *Bell* v. *Keepers,* 37 Kansas, 64; *Shaul* v. *Brown,* 28 Iowa, 37; *Parli* v. *Reed,* 30 Kansas, 534; *Gibbs* v. *Ames,* 119 Mass. 60; *Kline* v. *Shuler,* 30 N. C. 484; *Vinal* v. *Core,* 18 W. Va. 1.

While the offence here attempted to be charged is not stated fully in the language of the statute and may not state the offence with sufficient fullness and completeness to make it the statutory offence thereby intended to be charged or stated, nevertheless the defects therein found are not so glaring and palpable that the constable serving the warrant, a person of ordinary intelligence, but not versed in law, would probably detect in reading it. The defects such as would render it of no effect as a warrant must be, as this Court has said, "so glaring and palpable that any person of ordinary intelligence, by merely looking at and reading it, will at once pronounce it null and void." The defects that render a warrant of no effect in the sense that the liability of the defendant is defeated in an action for malicious prosecution, are not those defects that are to be found after a judicial scrutiny

and investigation. In this case the Justice of the Peace had jurisdiction of both the subject-matter and the person, and thus we cannot agree with the defendant that the liability of the defendant in this action is defeated by reason of the defects complained of in the charge or warrant under which the plaintiff was arrested.

For these reasons we think the Court below committed no error in rejecting the defendant's 1st and 2nd prayers.

Upon the facts of the case, including the admission of the defendant that the warrant under which she was arrested was sworn out by him, the Court in our opinion committed no error in rejecting the defendant's 3rd prayer.

The 4th prayer will be considered with the first exception.

By the 5th prayer of the defendant the Court was asked to instruct the jury "that there is legally sufficient evidence in this case that there was probable cause for procuring the warrant mentioned in this cause, and causing the arrest of plaintiff as mentioned in the evidence." Probable cause, by the general rule, is a mixed question, one of law and fact and "the jury, in our practice, are always instructed hypothetically as to what constitutes probable cause * * * leaving to them to find the facts embraced in the hypothesis." *Boyd* v. *Cross,* 35 Md. 197; *Thelin* v. *Dorsey,* 59 Md. 539.

This prayer which asks the Court to instruct the jury that there is legally sufficient evidence of probable cause does not leave to the jury to find the existence of the facts relied on as constituting such probable cause. It was therefore properly rejected.

Nor do we think the Court committed any error in rejecting the 6th, 9th and 10th prayers of the defendant. In our opinion the granted and conceded prayers of the plaintiff, together with granted prayers of the defendant properly present the law of this case.

In addition to the reasons that we have given for holding that the 1st, 2nd, 3rd, 4th, 5th and 6th prayers of the defendant were properly rejected, they were also properly rejected

for the further reason that all these prayers, either in express terms or in effect, require the jury to find for the defendant, and thus take the case from the consideration of the jury. By the 4th prayer of the plaintiff, a conceded prayer, the facts of the case were submitted to the jury for them to find a verdict either for the plaintiff or defendant, and if for the plaintiff, they were instructed as to the damages to which she was entitled; and by the 5th prayer, likewise a conceded prayer, they were instructed as to probable cause. The defendant having conceded these prayers, prayers that submitted the case to the jury for their finding, could not consistently ask that the case *should not be submitted to the jury,* and thus cannot complain of the refusal of the Court to grant such instructions.

In the case of *Siltig* v. *Birkenstack,* 35 Md. 273, where the lower Court refused to grant a conceded prayer of the defendant, upon appeal our predecessors held that there was error in depriving him of the benefit of prayers which the plaintiff had conceded, and in that case the Court further said: "The rule is well established, that what is admitted or conceded to be the law by the plaintiff or defendant, as the case may be, at the trial of a cause, is binding upon him, and if it is accepted by the other side, it becomes the law of the particular case." *The Balt. & Ohio R. R. Co.* v. *Resley,* 14 Md. 442; *Baugher* v. *Wilkins,* 16 Md. 46; *Gill* v. *Staylor,* 93 Md. 453.

To have granted the prayers of the defendant taking the case from the jury, the Court would necessarily have deprived the plaintiff of the conceded prayers whereby the facts of the case were to be submitted to the jury for its finding. The Court could not take the case from the jury and at the same time submit the facts to the jury for its finding, and thus the Court committed no error in rejecting said prayers of the defendant.

In the trial of the case the plaintiff offered in evidence, in support of the allegations of the declaration, a recognizance

that had been entered into by her for her appearance at the time and place therein stated to "answer unto all such things as shall be alleged against her, and particularly for unlawfully removing from the city, hypothecating or secreting one piano valued $325 under recorded conditional contract without first obtaining in writing the consent of the mortgagee in Baltimore City," etc. This paper or recognizance was sent from the station house to the clerk of the Criminal Court of Baltimore City and by him sent to the Grand Jury and was by the Grand Jury returned to the said clerk with the following endorsement thereon: "Dismissed Nov. 4th, 1910. F. Edmunds Foster, Foreman."

The admission of this paper was objected to by the defendant. This recognizance was taken at the station house on the afternoon of October 28th and was read over by the officer at the station to the plaintiff in the presence of others, including the defendant, and was thereafter, as we have stated, sent to the clerk of the Criminal Court and through one of the deputies of said Court, a witness placed upon the stand, was produced in evidence. We think the Court committed no error in the admission of this paper as evidence, for if for no other reason, it was admissible to show that the prosecution thus commenced had been dismissed and was at an end, which is a necessary fact to be proven in an action for malicious prosecution.

Upon the admission of this testimony to the effect that the prosecution was dismissed and at an end, the Court was clearly right in rejecting the defendant's fourth prayer.

This brings us to the last exception to be considered. A witness produced by the plaintiff, while on the stand, was asked, "What was said, if anything, by Mr. Smith at the station house that morning about the payment of the money?" The money he referred to was that which the defendant claimed was owing to him upon the piano, mentioned in evidence, that had been sold to the plaintiff by the defendant. This question was objected to by the defendant, and upon

its being overruled an exception was noted. The witness answered saying: "Mrs. Brown (the plaintiff) offered to settle it there; she said she did not know she owed quite that much, but she would be willing to settle if he would wait a few minutes until she got some money, and he turned around and said, 'I. did not come to settle that, and my lawyer is not here either.'"

The plaintiff in this case, without objection, stated fully the conversation with the defendant, of which the answer in reply to the question above objected to, forms a part; and the defendant too, in his examination in chief, in response to questions propounded by his attorney, gave in detail the said conversation with the plaintiff. This conversation as given by both the plaintiff and defendant does not materially differ from that contained in the answer of the witness. Therefore, should this testimony be regarded as inadmissible for any reason, the defendant was not injured thereby, and thus if wrongfully admitted, no reversible error was committed.

From what we have said the judgment of the Court below will be affirmed.

*Judgment affirmed, with costs to the appellee.*