IN RE APPEAL NO. 113, SEPTEMBER TERM, 1974 FROM THE CIRCUIT COURT OF BALTIMORE CITY, SITTING AS A JUVENILE COURT

[No. 113, September Term, 1974.]

*Decided October 23, 1974.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Solomon Reddick, Assistant Public Defender*, for appellant.

*James L. Bundy, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City*, and *Robert Aumiller, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

*Terry v. Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968) dealt with the right of the police to "stop and frisk" those whom the police deem to be "suspicious persons". The Supreme Court said at 9-10:

> "We would be less than candid if we did not acknowledge that this question thrusts to the fore difficult and troublesome issues regarding a sensitive area of police activity. . . . Reflective of the tensions involved are the practical and constitutional arguments pressed with great vigor on both sides of the public debate over the power of the police 'to stop and frisk' — as it is sometimes euphemistically termed — suspicious persons."

The fabric of this case has been tailored to fit the pattern of the above-quoted portion of *Terry*.

The appellant, a juvenile, age 17, in company with two other juveniles, was observed by detectives of the Baltimore

City Police Department, "Escape and Apprehension Unit", crossing an intersection of Brentwood Avenue and Lanvale Street in Baltimore City. The observation occurred at approximately 9:45 A.M. on January 29, 1974. One of the three, not the appellant, was carrying a brown paper bag. A detective testified, "One of them looked familiar to us, as of a possible escapee." The detectives had in their automobiles a book with "over five hundred photographs in it of individuals who are out of — or on escape." The three youths continued walking south on Brentwood Avenue toward Federal Street. The detectives "tried to back up and make a right hand turn and go down the alley . . . [in order] to stop the individuals and check them out for identification and also to check our photographs because we thought one of them might be possibly an escapee." As the detectives approached the threesome, the juvenile who was carrying the paper bag ran. One officer stopped the appellant and a second youth. The other officer pursued the youth who had run.

The fleeing youth was apprehended, and the bag that he discarded during the course of his flight was recovered. The appellant produced no identification and in fact gave the police an alias.[1] The police removed from the bag the contents thereof which proved to be a disassembled sawed-off shotgun.[2] The three pieces of the gun were wrapped in a karate uniform. All three of the juveniles were arrested and transported to the police station. Approximately four hours later the appellant was searched and found to possess "one hand-rolled cigarette" containing what proved to be marihuana. Appellant also had in his possession one package of "cigarette papers."

Appellant was charged in the Juvenile Court with "unlawfully . . . [carrying] concealed on or about [his person] a dangerous or deadly weapon, to wit: a sawed-off

---

1. The youth furnished the officers with his correct first name and the current surname of his mother.

2. A 16 gauge, double-barrelled Westley Richards, hand crafted and custom made in England. The barrels of the weapon were "estimated at at least two thousand dollars."

shotgun." [3] He was further charged with possessing a controlled dangerous substance, namely marihuana. At the outset of the delinquency hearing the State moved to dismiss the charge relating to carrying the shotgun because the appellant "did not at any time possess the shotgun." The charge was dismissed.

Appellant's counsel moved to suppress the evidence, *i.e.*, the marihuana cigarette and the cigarette papers, on the ground that the arrest of the appellant was illegal, and hence the fruits of that arrest were unlawfully obtained. The judge denied the motion after finding that there was "probable cause for the [arresting] Officers to feel that a misdemeanor was being committed . . . in [their] view." He assigned as reason therefor the following:

> "The fact that he saw these young men, the fact that there was flight, the fact that there was found this sawed-off shotgun which in itself is a crime — the possession of it. [4] I am well aware of the fact that it was not found directly on this Respondent. He was charged with it. This was the charge placed — that he was arrested for, and I think under the circumstances that have been described by the Officer the arrest was a lawful arrest. . . ."

---

**3.** Md. Ann. Code art. 27, § 36B provides in pertinent part:

(b) *Unlawful wearing, carrying, or transporting of handguns.* — Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun; and on conviction of the misdemeanor shall be fined or imprisoned. . . ."

"Handgun" is defined in § 36F (a) to mean "any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun. . . ."

A short-barreled shotgun is "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches." § 36F (a) (3).

**4.** *See* n. 3, *supra.*

After being reminded by counsel for the appellant that there was no flight on the part of the appellant, the court responded, "I know but they were all together, though. There was flight but the three of them were together."

The shotgun was not offered into evidence, obviously because of the dismissal at the outset of the charge pertaining thereto, but the record makes it vividly clear that the gun was, nevertheless, displayed in the courtroom. We think the court erred in finding probable cause for the arrest of the appellant, and that the marihuana cigarette and cigarette papers should have been suppressed in the light of the illegality of the arrest.

In *Gibbs v. State*, 18 Md. App. 230, 306 A. 2d 587 (1973) this Court considered a case wherein a police officer testified that he saw Gibbs and another male at about 11:30 in the morning standing on a street corner in "an area known to have a lot of assaults and robberies in the street, there's a lot of narcotics traffic in the area, there's a lot of crime, a high crime area." The arresting officer saw Gibbs and another male several times during the day. At about 3:45 P.M. he approached them. By that time a third male had joined Gibbs and his companion. When the officer alighted from an unmarked police vehicle and started toward the trio, two of them ran. Gibbs had his back turned and apparently did not see the officer. The officer asked Gibbs for identification. Gibbs did not have any and tried to run, but the officer grabbed his arm, frisked him, and found a fully loaded .22 caliber revolver in Gibbs's pocket. Judge Moylan, speaking for the Court in *Gibbs, supra,* pointed out that *Terry, supra,* and *Sibron v. New York,* 392 U. S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968) allowed "stop and frisk", but he noted that the arresting officer in *Gibbs* "articulated absolutely nothing as to what crime or type of crime he reasonably suspected the appellant of having engaged in, of then engaging in, or of being about to engage in." Judge Moylan said:

" . . . It is neither criminal nor quasi-criminal to stand around or to loaf about on a street corner,

particularly in broad daylight. Officer Stewart's predicate for the 'stop' was palpably 'nothing more substantial than [an] inarticulate hunch' or 'his inchoate and unparticularized suspicion,' condemned by *Terry* as inadequate. The 'stop' was unreasonable under the Fourth Amendment."

In *Sibron, supra,* Mr. Justice Harlan, in a concurring opinion, stated:

" . . . In the first place, although association with known criminals may, I think, properly be a factor contributing to the suspiciousness of circumstances, it does not, entirely by itself, create suspicion adequate to support a stop. There must be something at least in the activities of the person being observed or in his surroundings that affirmatively suggests particular criminal activity, completed, current, or intended."

Although the detective in the instant case stated that the appellant and the other two juveniles were in a high crime area that was replete with narcotics traffic and armed robberies which have "been occurring with sawed-off shotguns and handguns", our independent review of the record fails to disclose that the appellant evidenced any conduct that would justify a "stop" within the meaning of *Terry, Sibron* and *Gibbs, supra.* It is no crime, of course, for three youths to walk on a sidewalk at 9:45 A.M. It is no crime to carry a paper bag. Such an occurrence, which we think to be an everyday happening, does not give rise to a "reasonable suspicion" that any particular criminal activity has been completed, is afoot, or is contemplated. Nor does the fact that the detective "thought one of them [not the appellant] might be possibly an escapee" elevate his inchoate hunch to the level of "reasonable suspicion".

" . . . [T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . Anything

less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. . . . And simple 'good faith' on the part of the arresting officer is not enough." *Terry, supra* at 21-22.

*See also Gibbs, supra* at 238.

The arresting officer in the case at bar, in all probability acted in "good faith", but as noted in *Terry*, that is not a sufficient basis for the stop and subsequent search. Notwithstanding whatever basis the officer may have had for stopping the youth who fled, the stopping of appellant was a transgression of his Fourth Amendment rights. Under the holdings of *Terry, Sibron* and *Gibbs* the appellant's motion to suppress the evidence should have been granted.

*Judgment reversed.*