## MICHAEL GARY MARTIN *v.* STATE OF MARYLAND

[No. 1709, September Term, 1980.]

*Decided March 4, 1982.*

The cause was submitted on briefs to MASON, LISS and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *John L. Kopolow, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Michael A. Anselmi, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Larry Doan, Assistant State's Attorney for Baltimore City,* for appellee.

MASON, J., delivered the opinion of the Court.

In this case we are asked to decide whether the street encounter between appellant and the police constituted a violation of appellant's Fourth Amendment rights.

Michael Gary Martin, appellant, was convicted by a jury in the Criminal Court of Baltimore of burglary. On appeal his principal assignment of error is that the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal stop and seizure.

On 9 January 1980 around 11:00 a.m., a man forcibly entered the apartment of Sandi Bagley at 1420 Union Avenue and stole a ring, a watch, and a Realistic brand Radio. Shortly thereafter Detectives Worden and Parker, while driving in the 1400 block of Union Avenue in an unmarked car, observed appellant approaching them and carrying two portable radios. For some reason appellant made an about-face and walked rapidly in the other direction looking back over his shoulder. The detectives followed appellant into an alley where they stopped their vehicle, identified themselves, and asked appellant for some identification. In searching for an identification, *i.e.,* his social security card, appellant placed the radios on the police vehicle and removed several items from his pocket, including a lady's wrist watch and a ring. While the radios were on the police vehicle, the serial number of the larger radio with the

brand name "Realistic", was copied. After checking the serial number and finding that the radio had not been reported stolen, the officers left the scene.

Later the same day the victim reported the crime and gave the police a description of the burglar which matched that of appellant. She was shown a photographic array and the photograph of appellant was selected. The following day appellant was arrested.

## I.

Appellant argues, in essence, that the stop by the police was an illegal seizure of his person and the court erred in not suppressing the evidence obtained as a result thereof. In disposing of appellant's motion to suppress, the trial court said:

> THE COURT: All right. Now, I'll rule on one motion. I have the other two motions. I find as a fact that the officers had a perfect right to stop the defendant in this case. I think the conduct of the defendant, the police purpose was certainly a legitimate one. The appearance of the defendant, the way he acted and so on, on the balance sheet probably would be sufficient under *Terry v. Ohio* to stop and ask him some questions. Here we didn't have a frisk, so we don't have that frisk element involved here. In any event, I think the police had a proper right to stop him and ask him to identify himself. He didn't object to identifying himself. He did, in fact, attempt to identify himself. As he did so he placed two radios on top of the police car. The police officers' testimony, which the Court accepts as true and convincing, was that the larger of the two radios, one was a cassette radio, had clearly visible to him the word, "Realistic," on it, indicating that it was a Realistic make cassette-type radio. The other, he didn't indicate just what make it was. In addition to that, the defendant, in searching his pockets,

come up with identification, which was a Social Security card, did display certain items, one being the ring and the other being a watch, the wrist watch. I think that the evidence with respect to the ring, the wrist watch, the radios, and the make of the radio fall within proper view of the officers were permitted. With respect to the serial number, which is quite a different situation, the officer had to take the radio, hold it up, look at it carefully to obtain a serial number. The Court will construe that to be a seizure and, therefore, will not permit the State to introduce evidence of the serial numbers.

At trial the police were permitted to testify regarding the items that were observed in appellant's possession at the time of the stop, *i.e.,* the Realistic Radio, the lady's wrist watch and a ring.

In *Terry v. Ohio,* 392 U.S. 1 (1969) apparently relied on by the trial court in denying appellant's motion to suppress, except as to the serial number on the radio, the Supreme Court "recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized that person.' " *Id.* at 16. The court further recognized the narrow authority of police officers who have reasonable and articulable suspicion of criminal activity to make a limited stop of an individual based on less than probable cause.

According to appellant the police, in stopping him, acted on an "inchoate and unparticularized suspicion or hunch" in violation of *Terry*—as evidenced by the following colloquy:

Q. Was there any specific reason why you followed Mr. Martin?

A. Let's say just general action at the time, and the way he kept looking back to see if someone was following him, and the reason that he was carrying two radios and neither of them was playing. And just small things, such as that, that I just took a

shot in the dark to see what he was doing. He looked unsure of himself, which way he wanted to go.

In support of his contention that the stop was not based on a reasonable suspicion that he had committed or was about to commit a crime, appellant relies on *Anderson v. State,* 282 Md. 701, (1978). There, the police were investigating a robbery committed six days earlier by a "Mutt and Jeff" team of two black males. During the investigation the police observed two black males — one tall and one short — walking in the neighborhood allegedly frequented by one of the robbers. The police were in plain clothes and driving an unmarked vehicle. As the vehicle passed these two men they walked in the other direction looking back a number of times at the unmarked police car. The officers turned the car around, pulled up next to the defendant and his companion and proceeded to conduct a "stop and frisk." The defendant, who was holding a brown paper bag, was told to put it on the car; as he placed the bag on the car the police officer heard a metallic thump or click. After the pat-down, the police opened the bag and found a chrome-plated revolver. It later developed that the defendant and his companion were not the persons who committed the prior robbery. Defendant, however, was tried and convicted on the handgun charge. The Court of Appeals, in reversing, noted:

> Here, there were no facts from which it could be reasonably inferred that Anderson was the person the police officers were seeking, and hence that he was armed and dangerous. To arrive at such an inference from the tenuous facts that a tall and a short black man are seen together leaving a group, six days after a robbery committed by a tall and a short black man, in a neighborhood one of the alleged robbers is said to frequent, even when coupled with the fact that they looked back several times toward an unmarked police car, is wholly unreasonable. Indeed, to say that such facts constitute 'reasonable suspicion' would be perilously close to entitling a policeman 'to seize and search every person whom he sees on the street.' *Id.* at 707.

Consonant with this view *see In re Appeal No. 113,* 23 Md. App. 255 (1974) and *Gibbs v. State,* 18 Md. App. 230 (1973). In those cases this Court held that the predicate for the stop of the defendant lacked reasonable and articulable suspicion under the guidelines of *Terry. But see Watkins v. State,* 288 Md. 597 (1980) and *Moseley v. State,* 209 Md. 571 (1981) where the Court of Appeals held that the police officers had reasonable suspicion under *Terry* to forcibly stop the defendant.

Although the State contends that the furtive behavior of appellant, while carrying two radios, was a sufficient basis under *Terry* to justify the stop, we conclude, in view of the rationale of *Anderson v. State, supra, In re Appeal No. 113, supra* and *Gibbs v. State, supra,* that the predicate for the stop did not give rise to a reasonable and articulable suspicion that appellant had committed, was committing or about to commit, a crime as required by *Terry.* Thus, the evidence was insufficient to justify a *Terry-type* stop. This, however, does not end our inquiry.

The State argues in the alternative that appellant's encounter with the police was not a seizure of his person nor an intrusion on his Fourth Amendment rights. We agree. While the Supreme Court in *Terry* held that whenever a police officer accosts an individual and restrains his freedom to walk away he has seized the person, the Court noting the "rich diversity" of police-citizen encounters also observed: "Obviously, not all personal intercourse between policemen and citizens involve 'seizures' of persons. Only when the officer by means of physical force or show of authority has in some way restrained the liberty of a citizen may it be concluded that a seizure has occurred." *Id.* at 19, n. 16. *See United States v. Wylie,* 569 F. 2d 62, 67 (D.C. Cir. 1977) where the Court, in reliance on the above-quoted language from *Terry* observed:

> But police-citizen communications which take place under circumstances in which the citizen's 'freedom to walk away' is not limited by anything other than his desire to cooperate do not amount to

'seizures' of the person, and consequently may be initiated without a reasonable, articulable suspicion, much less probable cause.

In *United States v. Mendenhall,* 466 U.S. 544 (1980) two drug enforcement agents stopped a woman in the concourse of an airport because they believed her behavior was typical of a person carrying illegal drugs. The agents, after identifying themselves, asked her for some identification and her airline ticket. After observing that the airline ticket and her driver's license bore different names, the agents returned them and asked her if she would accompany them to the airport office for further questioning. On arrival at the office she consented to a search, and drugs were found on her person.

On certiorari, the central inquiry before the Supreme Court was the same as that presented in the instant case, *i.e.,* whether the initial stop of the defendant violated the Fourth Amendment. A majority of the Court in an opinion by Justice Stewart agreed that the Fourth Amendment had not been violated by the stop. Two members in the majority opinion held that the encounter between the agents and the defendant in the airport did not constitute a seizure within the meaning of the Fourth Amendment. The other three members in the majority opinion did not reach this issue because it was not considered below. They assumed that the stop did constitute a seizure but did not violate the Fourth Amendment since it was based on reasonable suspicion of criminal activity. In articulating the test for a seizure, Justice Stewart said:

> We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and

oppressive interference by enforcement officials with the privacy and personal security of individuals. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification. *Id.* at 553-554. (Citations omitted)

And in finding that no seizure occurred, Justice Stewart stated:

The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official. . . . In short, nothing in the record suggests that the respondent had any objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that the agents' initial approach to her was not a seizure. *Id.* at 555. (Citations omitted)

*Accord United States v. West,* 651 F.2d 71 (1st Cir. 1981).

The case of *Brown v. State of Texas,* 443 U.S. 47 (1979) is inapposite. In that case the police stopped Brown in an alley and requested identification. When he refused he was frisked, arrested and taken to the police station. The Supreme Court held that it was a violation of the Fourth Amendment to detain and require Brown to identify himself in the absence of any reasonable suspicion that he was engaged in or had engaged in criminal conduct. In *Mendenhall, supra,* the Court noted that there was no seizure of Brown until Brown was frisked and arrested.

Returning to the facts in the present case, the following testimony of Detective Donald Worden amply demonstrates

that the encounter with appellant did not constitute a seizure of his person:

DEFENSE COUNSEL: Did you ask him what his name was?

A. Yes. We asked him for identification, and he produced a social security card.

Q. He was under arrest at that time; is that correct?

A. No, Sir.

Q. Was he free to go at any time?

A. Yes, sir.

Q. If he had picked up the radios and walked off, what would you have done?

A. My feelings would have been hurt, but I wouldn't have done nothing else.

\* \* \*

THE WITNESS: I would let him go. He was not physically restrained in any way. He was standing alongside the car the whole time. He had freedom of movement.

Because street encounters between citizens and police officers are "incredibly rich in diversity", we must evaluate each case in accordance with the particular array of facts presented. Here, the officers approached appellant and asked for some identification. During this encounter, which was over within a matter of minutes, no weapons were displayed, no harsh or abusive language was used, and appellant's freedom of movement was not restrained. While officers may approach and direct inquiries to citizens without probable cause or without reasonable and articulable suspicion of criminal activity, the citizen may decline to respond to such inquiries and is free to walk away.

Applying the test enunciated by Justice Stewart in *Mendenhall* to the facts before us, it is manifest that the encounter between the police officers and appellant did not constitute a seizure of his person, nor was it a violation of his Fourth Amendment right. Thus, the challenged evidence was properly admissible at trial.

## II.

The further argument of appellant that the court erred in denying his motion to suppress the in-court identification of the victim because the extrajudicial photographic identification procedure was impermissibly suggestive is without merit and requires little discussion.

On the evening of the crime the victim was shown a photographic array consisting of six photographs and she immediately selected the photograph of appellant. After the victim had selected the photograph, Detective Worden said: "That's fine," and the victim "kind of got [the] impression" that she had chosen the individual the detective suspected of the crime. This comment by the detective did not render the photographic identification procedure impermissibly suggestive, nor did it taint the in-court identification. In *Howell v. State,* 18 Md. App. 429, 435 (1973) we said: "It is ... implicit in any photographic viewing that the police are not engaging in an exercise in sheer futility, which would be the case if they did not 'possibly have the person involved.' " Accordingly, we find no error.

*Judgment affirmed.*
*Costs to be paid by appellant.*