587 A.2d 561

**John William BARNHARD, Jr.**

v.

**STATE of Maryland.**

**No. 597, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 28, 1991.

Murray L. Deutchman (Levin & Gann, P.C., on the brief), Rockville, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before BISHOP, ROSALYN B. BELL and CATHELL, JJ.

ROSALYN B. BELL, Judge.

A jury in the Circuit Court for Montgomery County convicted John William Barnhard, Jr. of resisting arrest. He raises four issues for our review:

— Whether the acts of the police amounted to an arrest or detention at the time that Barnhard was told that he could not leave without giving his name.

— Whether the arrest or detention, which occurred at the time Barnhard was advised that he could not leave without giving his name, was a lawful arrest or detention.

— Whether Barnhard's initial reactions to being told that he could not leave amounted to unlawful resisting arrest as a matter of law.

— Whether the trial court was correct in this case in instructing the jury that it was bound by the law and that counsel could not argue the law to the jury.

The first two issues, in essence, challenge the jury instructions dealing with Barnhard's detention; namely, whether it was an arrest. We will address the issue of those instructions together with the fourth issue. The third issue will be dealt with separately because it is essentially an attack on the sufficiency of the evidence. We will affirm.

## FACTS

A stabbing occurred at Bubba Louie's Bar in Wheaton on November 27, 1989.[1] Beyond this, Barnhard and the State agree on little else. In the interests of clarity and brevity, we have condensed the testimony into "prosecution" and "defense."

### —Prosecution—

Numerous police officers testified at trial on behalf of the prosecution. Generally, they stated that Barnhard was disorderly, which prompted his arrest. In their view, Barnhard impeded their investigation of the stabbing immediately upon their arrival by blocking access to the crime scene, disrupting the investigation, and inciting the crowd. Barnhard refused to answer questions regarding his identity. He was loud and abusive to the police, using obscenities, gestures and threats. Barnhard insisted the police could

---

1. Apparently, Barnhard was not considered a suspect in the stabbing.

not stop him or talk to him and if they persisted in interfering with him, there would be violence. According to the police officers, Barnhard continued to gesture threateningly. Because the conduct continued, Barnhard was placed under arrest for disorderly conduct. At this point, the officers testified that Barnhard resisted arrest and assaulted them by throwing punches, breaking their hold on him, and attempting to strike them with a flashlight and a loose handcuff. Ultimately, one officer struck Barnhard three times with her flashlight to subdue him.

### —Defense—

Barnhard and his witnesses saw it differently. In their view, the police instigated the confrontation by not allowing Barnhard to leave and threatening him with arrest if he did not give his name. Finally, they seized him and, in response, Barnhard resisted. Defense testimony indicated that Barnhard repeatedly tried to leave the scene, but was stopped and even threatened with arrest for not providing his name to the police. Barnhard declined to give his name but allowed the police to search his jacket upon request. According to defense witnesses, the jacket ended up on the floor. Barnhard testified that the officer searching the jacket told him she was "starting trouble" with him. Testimony indicated that at this time handcuffing was attempted, but Barnhard pulled his arm away. In response, a female officer hit him on the head with a flashlight. Barnhard left the premises under arrest. He was later charged with counts of assault, resisting arrest and disorderly conduct.

## JURY INSTRUCTIONS AND COUNSEL'S CLOSING ARGUMENT

Appellant claims the trial court should have instructed the jury that he was arrested at the point when the police initially detained him to learn his identity. He also argues that the trial court erred in instructing the jury that it was bound by the court's instructions as to the law. He further

contends that the court erred when it prevented counsel from arguing his interpretation of the law.

—Instruction that Appellant was Arrested when the Police Sought to Detain Him to Learn His Identity—

■ After discussions with counsel, the trial court gave extensive instructions on the resisting arrest charge. The court prefaced its instructions with a factual chronology that the court emphasized was only illustrative and not binding on the jury. The court stated at one point: "I don't mean for you to find the facts this way."

The court began its instructions to the jury by noting that the evidence appeared to show that the police responded to a stabbing; an encounter with appellant ensued; and the police alleged that he acted in a disorderly fashion. The court stated that appellant "contested that, and of course that is going to be something you are going to have to find." Continuing, the court noted that the police alleged that they then attempted to arrest him, that he resisted arrest, and that he assaulted each of the officers.

Turning to the encounter with appellant, the court stated: "You are advised that the officer, let me speak generally here for a moment; officers have the right to detain an individual briefly short of arresting him for purposes of questioning where a crime has been committed and the individual is known to have been a witness to that crime.

"Now, this is short of arresting, understand; questioning. For purposes of this case you may also assume that the [appellant] had the right to refuse to identify himself to the officers. He needn't answer that question. The issue in this case, or one of the underlying issues in this case is whether in refusing to identify himself to the officers the [appellant] did so in a way as to engage in disorderly conduct.

"That is the issue in this case, not whether or not he had a right to refuse but whether he in some fashion refused to do so in a disorderly fashion. Now, you are going to consider this in two ways because I am going to

go back and give you the specific ways in which this develops in a moment.

"One of the questions you are going to have to answer in this case is did the [appellant] commit disorderly conduct because that is one of the charges he is concerned with. The State is going to have to prove each and every element beyond a reasonable doubt and I will tell you about the elements in disorderly conduct in a minute.

"Now, there is a second way in which you have to consider the disorderly conduct charge and that is in connection with the resisting arrest. The question you are going to have to answer there is did the police have probable cause to believe that the [appellant] committed disorderly conduct.

"In other words, the police when they arrested him may have had good—some sufficient reason—I will explain what this means in a moment—to arrest him even though in the end he ends up not being guilty of disorderly conduct. If the police had probable cause, something less than that, to arrest him for then he yet may be guilty of resisting arrest even though you would finally find him not guilty of disorderly conduct.

"If the police had reasonable cause at the time they attempted to do so you could still find him guilty of resisting an arrest, a lawful arrest, on the theory that the police do not always know and can't prove then and there that somebody is absolutely guilty of an offense but there may be reason within which somebody can be apprehended.

"I just want you to see that that is the way that disorderly conduct functions. In the one instance you are going to have to find that in fact he was guilty of disorderly conduct and then when we talk about resisting arrest you are going to have to consider disorderly conduct whether the police had probable cause to believe, that is something less than absolute proof to believe that he was guilty of disorderly conduct."

The court moved on to an instruction on the elements of disorderly conduct, followed by a detailed instruction on the elements of resisting arrest. The court said that the crime consisted of three elements: (1) the defendant must be arrested; (2) the arrest must be lawful; and (3) the defendant resists or refuses to submit to that arrest. The court then discussed what constitutes an arrest. Next, the court defined a lawful arrest. The court repeatedly emphasized that the only issue the jury was to consider with regard to the lawfulness of the arrest was whether there was probable cause to believe appellant was guilty of disorderly conduct. Finally, the court also defined the concept of resistance.

The court emphasized that, if an arrest is unlawful, the arrestee can use any reasonable means, including force, to escape. If appellant used unreasonable force, then the jury could find him guilty of an assault. The court then defined the crime of assault.

At the conclusion of the instructions, defense counsel objected, stating that he disagreed with the court in connection with the law as it applied to the original detention. Counsel requested that the court instruct the jury that, "at the time the police officer approached [appellant,] he was considered arrested[.]" The court stated that counsel could argue to the jury when the arrest occurred. The court, however, declined to instruct the jury as to when it occurred, noting that a "fair difference of opinion" existed about when the arrest did occur.

The court instructed the jury that *when* the arrest occurred constituted one of the significant issues. The court stated that the jury could find appellant not guilty of disorderly conduct if the disorderly conduct occurred subsequent to the arrest and the conduct was committed resisting an unlawful arrest. The court continued, stating that, if the conduct occurred before the arrest, it could serve as the basis of a lawful arrest.

The trial court's extensive instructions were not erroneous. Appellant claims the court erred by not informing the jury that a detention of any sort constituted an "arrest" and, therefore, resistance to that detention would be justified. We do not agree. The detention must rise to the level of an arrest as well as be unlawful to justify appellant's conduct.

■ When a police officer stops a person, that action is not tantamount to an arrest. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *McChan v. State,* 238 Md. 149, 157, 207 A.2d 632 (1965), *cert. denied,* 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966), the Court of Appeals discussed arrest:

"An arrest has been defined as 'the detention of a known or suspected offender for the purpose of prosecuting him for a crime.' *Cornish v. State,* 215 Md. 64, 67, 137 A.2d 170, 172 (1957). As that case points out there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits. Where there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit. When one is approached by a police officer and merely questioned as to his identity and actions, this is only an accosting and not an arrest."

In contrast, a stop is much less intrusive than an arrest. *See generally Terry,* 392 U.S. 1, 88 S.Ct. 1868, *supra.*

■ Whether the initial detention in this case amounted to an arrest is factually a very close question. Appellant presented evidence that the officers indicated, and he believed, that he was under arrest before he became assaultive. The State, however, presented evidence that his assaultive conduct occurred when the police were merely questioning him. The State's evidence indicated that he was arrested after he became hostile. Thus, whether the

initial detention was an arrest or a stop was a question for the jury to decide. Apparently, the jury decided the initial detention was a stop and we cannot say it was wrong as a matter of law.

In Maryland, if a person is illegally arrested, he or she may use any reasonable means, including reasonable force, to effect his or her escape. *Rodgers v. State*, 280 Md. 406, 410, 373 A.2d 944, *cert. denied*, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977). In *Rodgers*, the Court reviewed the history of the right to resist an unlawful arrest. It noted that the underlying rationale for this right was the "provocation" of the unlawful arrest, which served to excuse an assault designed to thwart the unlawful arrest. *Rodgers*, 280 Md. at 412, 373 A.2d 944.

The *Rodgers* Court refused to expand the right to resist to an unlawful arrest made pursuant to a facially defective warrant. It noted that a growing number of jurisdictions had, in fact, restricted the right to resist an unlawful arrest. *Rodgers*, 280 Md. at 415–16, 373 A.2d 944. That decision rested on several grounds applicable here. First, quoting an address by Judge Learned Hand, the Court stated that the idea that one may resist a peaceful arrest is " 'not a blow for liberty but on the contrary, a blow for attempted anarchy.' " *Rodgers*, 280 Md. at 418, 373 A.2d 944. Second, resisting an arrest often resulted in injuries to police officers, suspects, and passersby that were much more grave than the unlawful arrest itself. *Rodgers*, 280 Md. at 419–20, 373 A.2d 944. The Court stated that physical resistance to an arrest was "[t]he least effective and least desirable of all possible remedies; as such, its rejection, particularly when balanced against the State's interest in discouraging violence, cannot be realistically considered a deprivation of liberty." *Rodgers*, 280 Md. at 421, 373 A.2d 944.

Much of the underlying rationale in *Rodgers* for restricting the right to resist arrest is applicable here. If it were not, police officers would be subject to attack in every

instance when, during the course of their investigation, they temporarily detain someone. To recognize the right to resist such momentary seizures, short of an arrest, serves only to expand the danger of violence. In keeping with the rationale set out in *Rodgers*, we conclude that there is no right to resist an "illegal" stop.

A further reason not to apply the defense of resisting an unlawful arrest to a mere stop is based on the distinction between a stop and an arrest. The stop, while an intrusion on liberty, is slight compared to the deprivation of freedom that results from an arrest.

"An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882. On the other hand, stops, by their nature, are momentary. *Cf. Michigan Dept. of State Police v. Sitz*, 496 U.S. ——, ——, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412, 420–21 (1990) (reasonableness of suspicionless motor vehicle stops to detect drunk drivers is measured by balancing important governmental interests against minimal intrusion occasioned by stop).

It follows that the "provocation" resulting from an illegal arrest is much more pronounced than the "provocation" reasonably stemming from a stop. Therefore, even if the initial stop of appellant was illegal, his subsequent actions must still be examined to determine whether that conduct justified an arrest. *See Diehl v. State*, 294 Md. 466, 478–79, 451 A.2d 115 (1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983) (where police officer's illegal command prompted entire episode, Court still analyzed defendant's responses to determine if they rose to level of disorderly conduct, justifying arrest); *Jenkins v. State*, 232 Md. 529, 535, 194 A.2d 618 (1963) (even assuming an initial illegal investigation and attempt to stop, subsequent traffic violations committed in officers' presence served as basis for arrest).

 Even if we found an illegal stop could be resisted, the stop of appellant was legal. The momentary detention of a material witness to allow the police to investigate a crime is permissible, even if the police do not suspect the person of wrongdoing. In *Watkins v. State*, 288 Md. 597, 605, 420 A.2d 270 (1980), the Court of Appeals quoted with approval the *ALI, A Model Code of Pre–Arraignment Procedure* § 110.2 at 272 (Commentary 1975):

" '[W]here a crime may have been committed and a suspect or important witness is about to disappear, it seems irrational to deprive the officer of the opportunity to 'freeze' the situation for a short time, so that he may make inquiry and arrive at a considered judgment about further action to be taken. To deny the police such a power would be to pay a high price in effective policing and in the police's respect for the good sense of the rules that govern them.' "

Other forms of similar temporary restraint also have been held to be reasonable. For example, in *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981), the Court held that the police could detain all persons in a house during a search pursuant to warrant.

 Police officers, in the normal course of investigating a crime, may detain the person momentarily in an attempt to learn what the person knows. *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979), demonstrates, however, that the person does not have to cooperate. The right of the individual to refuse to divulge his identity does not mean that the police cannot seek cooperation in their investigative efforts or temporarily detain him to learn his identity by other means. *Cf. Martin v. State*, 51 Md.App. 142, 150, 442 A.2d 191 *cert. denied*, 293 Md. 547 (1982).

The trial court's instructions were balanced. The instructions stated that the police could detain appellant temporarily; that he did not have to answer their questions; and that he only had the right to resist if he had been unlawfully arrested. The facts of this case were hotly contested.

From the testimony, the jury could have reasonably believed that prior to his disorderly conduct: there was no detention of appellant; or there was a stop but no arrest; or there was an arrest. The instruction given covered all of these possibilities. We find no error.

—Jury and Counsel Bound by the Court's Instruction—

█ The trial court instructed the jury that it was bound by the court's interpretation of the law and that it was obligated to apply the rule of law as stated by the court. At the conclusion of the instructions, defense counsel excepted, maintaining that the jury should have been instructed that it was the judge of the law. Counsel also maintained that he should be able to argue what the law was, as it applied to appellant's "original detention."

In 1955, in *Schanker v. State*, 208 Md. 15, 21, 116 A.2d 363 (1955), the Court of Appeals stated:

> "Under our almost unique Constitutional provision any instructions on the law which the [trial] court may give ... are purely advisory and the court must so inform the jury."

In 1976, in *Dillon v. State*, 277 Md. 571, 580, 357 A.2d 360 (1976), the Court of Appeals reaffirmed the principle that a court must inform the jury that its instructions as to what the law is are merely advisory, and that the jury is not bound to follow them. In *Dillon*, 277 Md. at 581, 357 A.2d 360, the Court went on to explain that defendants are entitled to have their counsel explain to the jury their legal theories, even though these theories may be at variance with the trial court's advisory instructions. These principles are grounded in Article 23 of the Maryland Declaration of Rights which provides:

> "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of facts, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

█ In more recent years, Article 23 has been interpreted in a less literal manner and the language of *Schank-*

*er* and *Dillon* has been eroded. In *Stevenson v. State,* 289 Md. 167, 176, 423 A.2d 558 (1980), the Court of Appeals [2] noted:

"Despite Article 23's facial breadth, it is a postulate well recognized in the prior decisions of this Court, and one which the United States Supreme Court correctly observed in *Brady v. Maryland,* 373 U.S. 83, [89, 83 S.Ct. 1194, 1198, 10 L.Ed.2d 215] (1963), that Article 23 'does not mean precisely what it seems to say.' "

The trial court is not uniformly required to instruct the jury that it is the judge of the law. *See, e.g., Stevenson.* Furthermore, counsel can be prohibited from arguing a view of the law contrary to that expressed by the court in its instructions. *See Montgomery v. State,* 292 Md. 84, 89, 437 A.2d 654 (1981). As the Court stated in *Montgomery,* "counsel may not in their arguments attempt to persuade the jury to enact new law or repeal or ignore existing law." *Montgomery,* 292 Md. at 89, 437 A.2d 654. Thus, where no "sound basis for a dispute as to the law of the crime [exists], the court's instructions are binding on the jury and counsel as well." *Montgomery,* 292 Md. at 89, 437 A.2d 654. As we explained, the trial court's instructions covered all the possibilities arising under the facts of this case. Appellant presented no sound basis to dispute the law.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant argues in his brief that the police unlawfully detained him when they informed him that he could not leave without giving his name. He also argues that he had the right to resist that unlawful detention, "first with words, then with threatening gestures, and then with physical force." As already stated, based on the facts, the jury reasonably concluded that he resisted a lawful arrest.

---

**2.** For background on the change of interpretation of Article 23, *see Stevenson,* 289 Md. at 173–76, 423 A.2d 558.

 In deciding any claim relating to sufficiency of the evidence, the appropriate inquiry is not whether we would have reached a different verdict:

> "[i]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). One purpose of this rule is to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. *"[A]ll of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original) (footnote omitted).

Here, the significant events began inside the bar when appellant decided to leave.[3] As previously noted, evidence was presented that appellant's language and actions disrupted the crime scene and investigation, challenged the police, and incited the crowd against the police. Police testimony also indicated that these acts precipitated appellant's arrest for disorderly conduct. In light of this evidence, a rational jury could find the police had at least probable cause to arrest appellant for disorderly conduct.

Appellant does not dispute that these actions were disorderly, only that the arrest occurred prior to these acts. The

---

**3.** Appellant was arguably also disorderly outside the bar when the police first arrived. According to one officer, appellant blocked the entrance to the bar, threatened the police with a stick, and yelled at the officers that he would not get out of the way, saying the police would have to kill him. He swore at them, calling them a bunch of "fucking cops." Those actions served to prevent the police from entering the bar, which could amount to the common law offense of obstructing a police officer in the course of her duties. *See Cover v. State,* 297 Md. 398, 413, 466 A.2d 1276 (1983) (outlining elements of offense).

police officers testified, however, that, as a result of these acts, one of them then announced that appellant was under arrest and touched him on the shoulder. Certainly, an arrest occurred at that point. *See Childress v. State*, 227 Md. 41, 43, 175 A.2d 18 (1961) (arrest occurred when officer laid his hand on suspect's shoulder and told him he was under arrest). At that point, one officer attempted to put handcuffs on appellant while two others held him. According to testimony, appellant, who does not dispute that he attempted to resist, struggled and punched at the officers. Testimony indicated he flailed with the handcuffed arm, attempting to hit the officers with the handcuffs. He also attempted to grab a flashlight. Viewing this evidence in the light most favorable to the prosecution, a rational jury could reasonably conclude that appellant resisted a lawful arrest.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.