699 A.2d 565

Theodore Louis PALL

v.

STATE of Maryland.

No. 1791, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Sept. 5, 1997.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Celia Anderson Davis, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Robert Dean, State's Atty. for Montgomery County, Rockville, on the brief), for Appellee.

Submitted before MOYLAN, SALMON and THIEME, JJ.

THIEME, Judge.

Appellant, Theodore Louis Pall, was convicted by a jury sitting in the Circuit Court for Montgomery County of harassment pursuant to Md. Ann.Code Ann. art. 27, § 121A. The circuit court sentenced him to 180 days, with all but 60 days suspended, and 5 years of probation. Finding that the evidence was insufficient to convict appellant, we shall reverse and remand the case with instructions that judgment be entered in his favor. To set out the factual background, we

will describe the three separate instances in which appellant allegedly harassed Marci Etman.

### -The First Incident-

On 16 May 1996, while shopping at MJ Designs in Gaithersburg, Marcie Etman noticed that a man, who was later identified as appellant Theodore Louis Pall, had been following her through approximately eight or ten aisles. She grew wary because the man never picked up any merchandise, although he was carrying a basket and had been in the store for quite some time. While she was purchasing her items at the checkout counter, appellant was waiting in the front of the store. He had not purchased anything. Etman became "extremely nervous" and asked an employee to escort her to her car.

### -The Second Incident-

More than six weeks later, on 2 July 1996, appellant held the door for Etman as she left a record store in Congressional Shopping Center in Rockville. He then followed her to another store. When Etman realized that he was the same man who had followed her at MJ Designs, she left the second store and phoned the police. At trial, Etman described what happened after she left to call the police:

> I walked the length of the shopping center very quickly, and all along the man was following, behind me the whole way, and I got to the telephone around a group—there was a lot of people. It was by a coffee shop, Starbucks. There was all kinds of people around and I went straight to the phone. And he sat down on a bench 20 feet away waiting.

The police arrived and told appellant to cease any contact with Etman; specifically, a police officer told appellant that, "if [appellant] ever saw [Etman] again, he was to just turn the other way." Appellant left without further incident.

### -The Third Incident-

Two weeks later, on 20 July 1996, Etman saw appellant at a Giant Supermarket in the Flagship Shopping Center in Rock-

ville.[1]  Appellant was again carrying an empty shopping basket.  Upon seeing him, Etman immediately contacted a store employee.  No evidence was presented that Etman and appellant spoke to one another, that he followed her on that day, or that appellant was aware of her presence in the grocery store.  During her testimony, Etman indicated:

> [R]ight away I recognized him, first of all, because it was so short of a time after, and he was wearing the exact same thing as the second time.  So it was like deja vu.  I mean it really, and I just panicked.
>
>     \*    \*    \*    \*    \*    \*
>
> I was just so frustrated, and upset, and angry, and again, I just didn't know what to do.  I was like what do I do, you know, who do I go to.  I didn't want to go into anymore aisles, leave myself alone.  So I immediately approached a man that was working there in the meat department, and went directly over to him and told him the situation. . . .

The employee took Etman into an office in the back of the store where she called the police.  By the time police arrived, appellant could not be located.

Appellant was charged under Md. Ann.Code art. 27, § 121A (1996 Repl.Vol.), entitled "Harassment."  That section reads, in pertinent part:

> (a) Course of conduct defined.—In this section "course of conduct" means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.
>
>     \*    \*    \*    \*    \*    \*
>
> (c) Prohibited Conduct.—A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:

---

1.  The Flagship Shopping Center is located about a half a mile from the Congressional Shopping Center.

(1) With intent to harass, alarm, or annoy the other person;

(2) After reasonable warning or request to desist by or on behalf of the other person; and

(3) Without a legal purpose.

Appellant was charged with two counts of harassment.[2] The first count alleged that on or about 2 July 1996, appellant followed Etman with the intent to harass, alarm, and annoy her after having been given reasonable warning to desist. The Second count alleged that on or about 2 July through 20 July 1996, appellant engaged in a course of conduct that seriously annoyed Etman, with the intent to harass, alarm, and annoy her after having been given a request to desist. The original charging document stated that the two incidents that comprised the second count occurred at Congressional Shopping Center; the third incident, however, actually occurred at Giant, which is located in the Flagship Shopping Center. After the State presented its case, appellant moved for judgment of acquittal on both counts due to insufficient evidence. He also moved for judgment of acquittal on Count II because the charging document erroneously stated that Giant was in the Congressional Shopping Center. The trial court denied the motion for judgment as to sufficiency of the evidence and allowed the prosecution to amend the charging document.

A jury found appellant guilty of both counts. For his conviction on Count I, appellant was sentenced to 90 days incarceration with all but 60 days suspended. For Count II, he received a 90-day suspended sentence to be served consecutive to the first sentence. Upon his release, he was to be placed on five years probation, a condition of which included no contact with Etman. After noting a timely appeal, appellant raises the following issues, which we have rephrased slightly, for our review:

---

2. Appellant was also charged under Md. Ann.Code art. 27, § 121B (1996 Repl.Vol.), entitled "Stalking." That charge was eventually nol prossed.

I. Was there sufficient evidence to support the State's allegation that appellant had been warned prior to 2 July 1996 to desist from his offending conduct?

II. Was there sufficient evidence to support the State's allegation that appellant had engaged in a prohibited course of conduct on or about 2 July to 20 July 1996?

III. Did the trial judge err in allowing the State to amend the charging document?

IV. Did the trial judge fail to instruct the jury that the prohibited "course of conduct" must occur after a reasonable warning as indicated in the harassment statute?

## I.

Appellant first asserts that the evidence was insufficient to support his conviction under Count I of harassment on 2 July 1996 because there was no evidence that appellant had been warned to desist prior to his conduct on 2 July 1996. We agree. There is sufficient evidence to convict when, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Dawson v. State*, 329 Md. 275, 281, 619 A.2d 111 (1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Appellate review is fashioned in such a way as to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Barnhard v. State*, 86 Md.App. 518, 532, 587 A.2d 561 (1991) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789).

One cannot be charged with harassment under § 121A unless his offending conduct follows a "reasonable warning or request to desist by or on behalf of the other person." Art. 27, § 121A(c)(2). The trial court should have granted the Defendant's Motion for Judgment of Acquittal as to the first count for harassment on 2 July due to the lack of evidence of an adequate warning.

■   Count I charges that appellant harassed Etman during what we have labeled "the second incident" at Congressional Shopping Center.  In order to be guilty of the crime charged, appellant must have:  (1) followed another person in or about a public place;  (2) without a legal purpose;  (3) with intent to harass, alarm, or annoy the other person;  and (4) *after a reasonable warning or request to desist by or on behalf of the other person.*  Assuming that there was sufficient evidence of all the other elements, there is no evidence that appellant was given a "reasonable warning or request to desist" as defined by § 121A(c)(2) prior to his conduct on 2 July 1996.  The State concedes that the police officer's warning on 2 July 1996 occurred after appellant's offending conduct and that appellant left after the police officer warned him to stay away from Etman.  The State contends that appellant was given a reasonable warning or request to desist when on 16 May an employee escorted Etman to her car because she was fearful of appellant.  We disagree.

■   A reasonable warning is one in which the defendant knows or has reason to know that his conduct is unwanted and is warned to stop.  There is no evidence in the record that appellant saw Etman being escorted to her car.  Quite simply, there is no evidence that anything was ever communicated to appellant that he should avoid Etman in a public place.  Thus, he cannot be charged for his actions on 2 July 1996 because he had not previously been given a warning to stop following Etman.

Moreover, even assuming, *arguendo,* that appellant saw Etman being escorted to her car and was subjectively aware that she was being escorted to her car because she was afraid of appellant, an issue can be raised as to whether this constitutes a "reasonable warning or request to desist" under § 121A. The broader issue is whether the warning must be stated directly to a person accused of following or whether it can be implied from actions.  We do not reach that issue, however, because, in the instant case, there is no evidence that appellant saw Etman being escorted to her car.

## II.

■ Appellant next contends that the evidence was insufficient to support his conviction under Count II. Appellant's charge under Count II is different from his charge under Count I because § 121A(c) criminalizes two distinct patterns of conduct. Subsection (c) of § 121A reads as follows:

(c) *Prohibited Conduct.*—A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:

Thus, the statute prohibits two types of actions: (1) following another person in or about a public place; and (2) maliciously engaging in a course of conduct. One of the offenses deals with a one-time instance of following another and the other proscribes a pervasive course of conduct. In the instant case, Count I charged appellant under the "following another person" language of art. 27, § 121A(c) for his conduct with regard to the "second incident" on 2 July 1996 at Congressional Shopping Center, and Count II charged appellant with a "course of conduct" with regard to his conduct on 2 July at the Shopping Center and 20 July 1996 at Giant.

"Course of conduct" is defined in the statute as "a persistent pattern of conduct, composed of a series of acts over a period of time, that evidence a continuity of purpose." Article 27, § 121A(a). Course of conduct is significant in two ways. First, it can encompass the entire criminal act. This occurs when all the incidents that comprise the course of conduct occur after the accused has been given a reasonable warning or request to desist. In these situations, the entire course of conduct is also the criminal act and is unquestionably prohibited by the statute. The second scenario is murkier. It involves a situation in which some of the acts that make up the course of conduct precede the warning to desist and the remaining acts follow the warning. An example is a situation when a pattern of conduct develops in which the accused harasses a victim, the accused is warned to stop, but still persists in his conduct. Eventually, the accused is arrested

and charged. The question raised by the second scenario is whether the series of acts that preceded the warning can be considered along with the actions that followed the warning to establish a "course of conduct." [3]

To reiterate, there is no question that the criminal act can only occur after a reasonable warning was given. The question presented in the second scenario above is whether acts that occur prior to the warning to desist can be considered in establishing the course of conduct. Appellant urges us to interpret this statute as requiring that the "series of acts" that constituted a course of conduct must have occurred *after* the victim or someone acting on behalf of the victim issued "a reasonable warning or request to desist." Under appellant's interpretation, acts that occurred prior to the warning could not be considered as the criminal act or to establish a course of conduct leading up to the criminal act. We are not required to reach that issue, however, because assuming, without deciding, that a series of acts that occur prior to the warning or request to desist can be used to establish a course of conduct, the evidence is still insufficient to convict appellant.

---

**3.** We will use the following hypothetical to explain fully our analysis. A woman breaks up with her former boyfriend and moves in with another man. Upset over the break-up, the ex-boyfriend begins following the woman, and verbally abusing her, as she leaves work each night for one week. Due to her fear of her ex-boyfriend and in an effort to avoid conflict, the woman walks away, says nothing, and drives home. On Monday of the following week, the ex-boyfriend again returns to the woman's workplace. This time the woman calls police. The police arrive and issue the ex-boyfriend a stern warning to leave the woman alone. Undeterred, the ex-boyfriend comes to the woman's workplace on Tuesday and follows her as she leaves work. After the woman notifies police, the ex-boyfriend is arrested and charged under the "following another in or about a public place" language of the statute, as well as the "course of conduct" portion. The ex-boyfriend can only be charged for the incident on the Tuesday of the second week because that is the only day that involved the criminal act (the statute clearly states that one can only be charged with a crime after being given warning). This is true whether he is charged with the "course of conduct" portion or the "following another" portion of the statute. The issue raised is whether the trier of fact may consider the previous week's incidents in determining whether a course of conduct existed.

In addressing the first issue, we stated that appellant did not receive reasonable notice during or immediately after the "first incident" that occurred at MJ Designs on 16 May 1996. Therefore, appellant was first given notice when the police officer told him to stop harassing Etman on 2 July 1996 at Congressional Shopping Center. The statute clearly mandates that in order for harassment to be proscribed, it must occur *after* the warning. Thus, only appellant's actions on 20 July 1996 could have been criminal because those were the only actions to occur after he was warned to desist. Etman testified, however, that as soon as she saw appellant on 20 July 1996 at Giant, she *immediately* contacted a store employee who contacted the police. There is no evidence to indicate that appellant was following Etman, or "maliciously engaging in behavior that alarms or seriously annoys another person." He merely turned the corner and saw her. Appellant cannot be punished for merely being present in a supermarket. The purpose of including a requirement of notice in the harassment statute is so that people will have a chance to modify their behavior. When he was warned on 2 July 1996 to desist from following Etman, appellant was told by a police officer that "if he ever saw her again, he was to just turn the other way." The evidence indicates that this is what appellant did. At the very least, Etman did not give him the opportunity to do so because she immediately left to notify a store employee. Therefore, appellant's actions at Giant on 20 July 1996 did not violate the statute. Because there was no criminal act, the evidence was insufficient to support his conviction and we must reverse the judgment and remand the case with instructions that judgment be entered in favor of appellant.

### III.

Additionally, appellant argues that the trial court erred in allowing the State to amend the charging document. At the close of the State's case, appellant moved for judgment of acquittal on alternative grounds: (1) that the evidence was insufficient to support convictions on Counts I and II; and (2) that Count II was deficient because the charging document

erroneously stated that the 2 July and 20 July 1996 incidents occurred at Congressional Shopping Center, whereas the 20 July incident actually occurred at Giant, which is not in the Congressional Shopping Center.[4] The trial judge should have granted appellant's motion for acquittal because the evidence was insufficient to support his convictions. Had the trial judge so ruled, the court would not have been faced with the issue concerning the charging document. We will not address an issue that was not generated by the facts of the case.

## IV.

Appellant's final argument is that the court erred by failing to instruct the jury that the continuing course of conduct must occur after the warning or desist has been made. Based on our resolution of issues I and II, we are not required to reach this issue.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS THAT JUDGMENT BE ENTERED IN FAVOR OF APPELLANT.**

**COSTS TO BE PAID BY MONTGOMERY COUNTY.**

---

4. Article 27, § 121A(c) provides, in pertinent part: "or *maliciously* engage in a course of conduct...." (Emphasis supplied.) Appellant does not raise the issue of the absence of "malicious" in the charging document.