NIEMEYER, Circuit Judge,
dissenting:
After police illegally stopped a Ford Crown Victoria, in which Travis Gaines was a passenger, one officer patted Gaines down for safety concerns. When the officer felt what he believed was a gun, he yelled to his fellow officers, “gun.” At that point, Gaines assaulted the officers in an effort to flee, elbowing one in the face and slugging another. After the officers arrested Gaines, pushing his torso into the open trunk of the vehicle, the gun fell from Gaines’ waistband onto the floor of the trunk, and the officers seized it as evidence in this case.
The majority orders that the gun be suppressed because the officers “discovered” the gun before Gaines committed his independent criminal act of assault, and, therefore the assault did not purge the taint of the unlawful stop. As the majority states, “We have little difficulty concluding that where, as here, the discovery of the challenged evidence follows an unlawful search, but precedes an independent criminal act on the part of the defendant, that criminal act is not an intervening event for purposes of determining whether the ‘taint of the unlawful police action is purged.’ ” (Emphasis added). The majority emphasizes that the discovery of the gun and the simple sequence of events determines the issue. This analysis, however, fails to apply the relevant test for determining whether the tainted discovery of the gun tainted the gun’s later seizure.
I submit that the discovery of the gun in this case is an irrelevant fact. The only relevant question is whether knowledge of the existence of the gun gained by its discovery was “exploited” to enable the officers to seize the gun after the assault. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 *177 (1963) (explaining that the taint of illegal officer conduct applies to seizure only if the seizure exploited the illegal conduct).
In the record of this case, there is absolutely no evidence that the “discovery” of the gun was exploited to seize it. Even though the “discovery” of the gun was “tainted” as part of the illegal stop, that fact was inconsequential to the gun’s later seizure. The gun fell out of Gaines’ waistband onto the floor of the car’s trunk while officers were lawfully arresting Gaines for assault, and the officers simply picked the gun up after they completed the lawful arrest. The officers did not use the information of the gun’s presence either to arrest Gaines or to seize the gun. Rather, while arresting Gaines for assaulting police officers, the gun fell out of his waistband on its own accord while officers were handcuffing him, and, when officers saw it on the floor of the car’s trunk, they picked it up and retained it as evidence to prosecute Gaines with a violation of 18 U.S.C. § 922(g)(1).
I would conclude that the gun should not be suppressed and that the government should be allowed to use the gun as evidence in its prosecution of Gaines for violation of § 922(g)(1). I would accordingly reverse the district court’s suppression order.
I
In the early afternoon of January 26, 2010, three Baltimore police officers pulled over a Ford Crown Victoria based on their observations of a cracked windshield. In the Crown Victoria were three individuals, two women in the front seats and Gaines in the back seat. As the officers approached the vehicle, Officer Shetterly observed Gaines rising up out of his seat, “reaching in between the two seats,” and making a “shoving motion in his front waistband area.” While the other officers were conferring with the driver to examine her license and vehicle registration and to obtain permission to search the vehicle, Officer Shetterly ordered Gaines to exit the vehicle. As Gaines exited, he placed his hand on the front of his waistband, a movement that Officer Shetterly found was consistent with a “gun check” by an armed individual. For safety concerns, Shetterly patted Gaines down and felt the trigger guard and butt of what he thought was a gun. When he yelled “gun” to alert his fellow officers, Gaines hit Officer Shetterly in the face with his elbow, forcing the officer to step backwards. As Gaines attempted to flee, moving in the direction of Officer Schneider, he started reaching to his waistband and, at the same time, punched Officer Schneider in the face. At that point, Officer Shetterly observed what he suspected was a silver gun with a black handle. Officers Shetterly and Schneider then wrestled Gaines into the trunk of the vehicle, which the driver had opened, and held his right arm to prevent him from pulling out the gun with his right hand. As the officers completed handcuffing Gaines and removed him from the trunk, the gun fell out of Gaines’ waistband and onto the floor of the trunk. The officers then seized the gun and held it as evidence.
Gaines was charged with violating 18 U.S.C. § 922(g)(1) (prohibiting a felon from possessing a firearm), and, during a hearing on Gaines’ motion to suppress the gun, all three officers testified that they had seen the crack in the windshield of the Crown Victoria, which had formed the basis of the traffic stop. After the district court observed photographs of the crack, it rejected the officers’ testimony that the crack could have been seen, and it found, “as a factual matter, that the officers could not have seen the very slight crack in the lower right portion of the Crown Victoria’s *178 windshield.” Accordingly, it concluded that the traffic stop was not supported by reasonable suspicion and therefore was unconstitutional. The court also found, however, that Gaines’ suspicious actions in the vehicle and when exiting the vehicle justified Officer Shetterly’s pat down of Gaines. Ultimately, the court ordered that the gun be suppressed because it was “discovered as a direct result of the illegal traffic stop,” and rejected the government’s argument that Gaines’ lawful arrest for assaulting the police officers purged the taint of the illegal stop so that the gun was legally seized as part of a lawful arrest.
From the district court’s order suppressing the gun, the government appealed.
II
The applicable jurisprudence is well established. The Fourth Amendment protects citizens against “unreasonable searches and seizures,” and the judicially created exclusionary rule is a “supplement” that serves to enforce those Fourth Amendment protections. Davis v. United States, — U.S.-, 131 S.Ct. 2419, 2423, 180 L.Ed.2d 285 (2011). The exclusionary rule is “a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation.” Id. (emphasis added). But the rule “applies only where it results in appreciable deterrence,” and the Supreme Court “ha[s] never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.” Herring v. United States, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (internal quotation marks omitted). “The principal cost of applying the [exclusionary] rule is, of course, letting guilty and possible dangerous defendants go free — something that ‘offends basic concepts of the criminal justice system,’ ” id. (quoting United States v. Leon, 468 U.S. 897, 908, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)), and the application of the rule is only proper “where its deterrence benefits outweigh its substantial social costs,” Hudson v. Michigan, 547 U.S. 586, 594, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (quoting Penn. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998)) (internal quotation marks omitted).
To be subject to the exclusionary rule, evidence need not be obtained only during the course of the Fourth Amendment violation. Wong Sun, 371 U.S. at 487-88, 83 S.Ct. 407. In Wong Sun, the Supreme Court held that evidence that is the “fruit” of an unconstitutional search or seizure must also be suppressed. Id. at 484, 83 S.Ct. 407. Allowing the introduction of evidence indirectly acquired as a result of illegal police conduct would undermine the deterrence of the exclusionary rule entirely by giving officers an incentive to stop and search citizens illegally. See Brown v. Illinois, 422 U.S. 590, 602, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
The inquiry into what evidence constitutes “fruit” of illegal conduct and must therefore be suppressed is not a simple but-for causation determination. The Court in Wong Sun set forth the proper standard:
We need not hold that all evidence is “fruit of the poisonous tree” simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.
*179 Id. at 487-88, 83 S.Ct. 407 (emphasis added); see also Brown, 422 U.S. at 601-05, 95 S.Ct. 2254; United States v. Najjar, 300 F.3d 466, 477 (4th Cir.2002) (recognizing that whether a confession was obtained by the exploitation of an illegal arrest is to be determined by the application of several factors, including “the presence of intervening circumstances”). Thus, the governing test for determining whether illegal conduct by police officers taints a seizure of evidence following an intervening lawful arrest is whether the police “exploited” the illegal conduct in order to obtain the evidence. See Brown, 422 U.S. at 603, 95 S.Ct. 2254.
We applied these principles in United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997), a case factually similar to that before us, which, I submit, governs the disposition of this case. In Sprinkle, as in this ease, the court determined that the officers’ original stop and seizure of the defendant had been unlawful. Id. at 617-19. After the illegal stop, as an officer began to pat the defendant down, the defendant pushed the officer away and fled, pulling out a handgun and firing shots at the pursuing officer as he did so. Id. at 616. The officer arrested the defendant and seized the firearm, which was in plain view at the time, and the defendant was charged with violation of 18 U.S.C. § 922(g)(1). In rejecting the defendant’s challenge to the admissibility of the seized gun as the fruit of an illegal stop, we stated:
If a suspect’s response to an illegal stop is itself a new distinct crime, then the police constitutionally may arrest the suspect for that crime. There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest.... [A] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct. Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible.
Sprinkle, 106 F.3d at 619 (emphasis added) (internal quotation marks and citations omitted).
As in Sprinkle, Gaines’ “response” to the pat down in this case was to commit the “new and distinct crime” of assault. See Barnhard v. State, 86 Md.App. 518, 587 A.2d 561, 565 (1991) (no right to resist an unlawful Terry stop), aff'd, 325 Md. 602, 602 A.2d 701 (1992). Even though the assault was “triggered by” the illegal stop, the assault itself was a “sufficient intervening event to provide independent grounds for arrest.” Thus, in the language of Sprinkle, “Because the arrest for the new, distinct crime [of assault] is lawful, evidence seized in a search incident to that lawful arrest is admissible.” 106 F.3d at 619.
The majority declines to apply Sprinkle, concluding that because, unlike in Sprinkle, the gun in this case was “discovered” before Gaines assaulted the officers, the gun’s subsequent seizure in connection with the lawful arrest was somehow tainted. The majority fails, however, to explain why “discovery” of the gun before the assault has any constitutional relevance. The proper and only inquiry must be whether the officers obtained the gun from Gaines by “exploitation of the illegal conduct.” Had the majority conducted this analysis, it would have no reason to reject the application of Sprinkle.
The officers in this case obtained the gun that formed the basis of Gaines’ § 922(g)(1) charge as a result of his lawful arrest, as the gun fell out of Gaines’ waist *180 band after he had been handcuffed for assaulting the officer. The officers simply-picked the gun up after it fell from Gaines’ waistband. There is absolutely no indication in the record that the arrest or the subsequent seizure of the gun was in any way the result of the government’s discovery of the gun, much less an “exploitation” of its discovery before the assault. Indeed, the government would not need to introduce any evidence of the original “discovery” of the gun or their prior knowledge of the gun in proving the illegal possession crime.
In furtherance of its holding that evidence of the gun’s discovery is relevant, the majority pieces together fragments of language from three other cases that use the word “discovery.” See ante, at 174-75. But each of those cases dealt with the suppression of a confession, for which the “discovery” and the “seizure” of the evidence were indistinguishable. Moreover, a closer look at the cases reveals that they provide no support for the majority’s conclusion that an officer’s discovery of a gun before an intervening crime and subsequent lawful arrest renders all action after the arrest tainted. Indeed, in selecting its quotes from these cases, the majority ignores language from them, as well as other similar cases, stating the proper rule that the police cannot use evidence that they obtain by the exploitation of unconstitutional conduct. See Brown, 422 U.S. at 603, 95 S.Ct. 2254 (inquiring “whether the confession [wa]s obtained by exploitation of an illegal arrest” (emphasis added)); United States v. Seidman, 156 F.3d 542, 548 (4th Cir.1998) (“If the government has committed a constitutional violation, however, evidence obtained as a result of the violation cannot be used unless the connection between the unlawful conduct and the acquisition of the evidence has become so attenuated as to dissipate the taint” (emphasis added) (internal quotation marks omitted)); United States v. Clark, 891 F.2d 501, 505 (4th Cir.1989) (“[T]he evidence gained as a result of [a Fourth Amendment] intrusion may ... be ruled inadmissible” (emphasis added)); id. (“Exclusion depends, in part, on whether the evidence was obtained as a result of that violation ” (emphasis added)); United States v. Reed, 349 F.3d 457, 464 (7th Cir.2003) (“A confession obtained ... must be excluded from evidence” (emphasis added)).
The proper analysis, as mandated by the relevant Fourth Amendment principles, is straightforward. The officers here stopped the Crown Victoria and seized Gaines illegally inasmuch as they stopped the vehicle without reasonable suspicion. Nonetheless, as the district court found, Officer Shetterly was justified in frisking Gaines. after the stop because of Gaines’ suspicious movements in the car and the need to protect himself and his fellow officers. During the course of Officer Shetterly’s pat down of Gaines, the officer discovered the presence of a gun in Gaines’ waistband and, because it was discovered during the course of an illegal stop, this discovery was tainted as the fruit of the illegal stop. Had Gaines been arrested at that point, before he committed the assaults on the officers, the evidence regarding the gun would obviously have to be excluded as the product of the illegal traffic stop. Similarly, if Gaines had successfully fled after Officer Shetterly felt the gun and the officers thereafter obtained a search warrant based upon the tainted discovery of the gun, the results of that search warrant would be excluded as the fruits of the illegal stop. But the assaults on Officers Shetterly and Schneider were new, voluntary criminal acts by Gaines that authorized the officers lawfully to arrest Gaines for the new, intervening conduct. In connection with the arrest and, *181 without any exploitation of the information about the gun’s existence gained from the tainted pat down, the gun fell from Gaines’ waistband into plain view. At that point, the officers seized the gun in connection with the lawful arrest, and therefore it can lawfully be offered at trial.
Ill
The majority’s holding also loses sight of the deterrence principles applicable to the exclusionary rule. “The ‘sole purpose’ of the exclusionary rule ‘is to deter future Fourth Amendment violations.’ ” United States v. Edwards, 666 F.3d 877, 886 (4th Cir.2011) (quoting Davis, 131 S.Ct. at 2426). The requirement for finding an exploitation of the illegal conduct originates in the rationale for the exclusionary rule itself. The very purpose of determining when the causal chain between police illegality and the eventual seizure of evidence has been broken “is to mark the point of diminishing returns of the deterrence principle inherent in the exclusionary rule.” United States v. Ienco, 182 F.3d 517, 526 (7th Cir.1999). The exclusion of tainted evidence reduces the incentive for officers to violate the Fourth Amendment, but officers have little incentive to stop people hoping they will commit a new crime so as to justify a subsequent arrest and search. As one court has recognized, “Police do not detain people hoping that they will commit new crimes in their presence; that is not a promising investigative technique, when illegal detention exposes the police to awards of damages.” United States v. Pryor, 32 F.3d 1192, 1196 (7th Cir.1994). Thus, “it is critical that courts wrestling with ‘fruit of the poisonous tree’ issues keep that fundamental [deterrence] notion in mind, for when it is lost sight of the results can be most unfortunate.” lenco, 182 F.3d at 526 (internal quotation marks omitted) (brackets in original omitted). Yet, that is precisely what has happened here — the majority has lost sight of the purposes for which the exclusionary rule extends to fruits of illegal police conduct and thus reached an unfortunate result.
Moreover, the rule announced by the majority today will lead to absurd results. If an officer sees or, in the majority’s language, “discovers” a bag of white powder on the front seat of a car during an illegal Terry stop, that powder could never be introduced at a trial for possession, no matter what intervening acts occurred, because, under the majority’s reasoning, the “discovery” is complete and there can be no intervening circumstances. See ante, at 173 & n. 4. In a similar vein, under the rule announced today, if the officer in Sprinkle had touched the gun prior to the defendant’s fleeing and shooting at the officer, the defendant could not have been charged with possession of a firearm. Why such a touch would be constitutionally significant in light of the principles behind the exclusionary rule is never explained by the majority.
To be sure, in this case Officer Shetterl/s discovery of the gun in Gaines’ waistband was the fruit of the illegal Terry stop, and under the governing principles, that discovery could not be exploited by the officers to obtain evidence to use against Gaines at trial. But the facts of this case demonstrate that no such exploitation occurred. Gaines attacked two police officers, tried to pull a gun out of his waistband to attack them further, and struggled to resist the lawful arrest. As part of that struggle, the gun that he was reaching for fell out of his waistband onto the floor of the vehicle trunk, in plain view of the officers. Only at that point did the officers seize the gun, and in doing so, they did not rely on their previous knowledge of the *182 gun gained by the tainted pat down, when the existence of the gun was “discovered.”
Allowing Gaines to benefit from this new rule suppressing the gun imposes “substantial social costs,” while offering no additional deterrence to police officers. See Hudson, 547 U.S. at 591, 126 S.Ct. 2159. Further, the majority’s new extension of the exclusionary rule to all evidence physically discovered after an illegal stop, without regard to any intervening events that may provide independent grounds for the actual seizure of the evidence, creates minimal, if any, additional deterrence for officers contemplating an illegal Terry stop. Such a holding fails to accommodate the Supreme Court’s clear guidance that “[sjuppression of evidence ... has always been our last resort, not our first impulse.” Hudson, 547 U.S. at 591, 126 S.Ct. 2159.
In short, the only unconstitutional conduct at issue in this case is the officers’ illegal Terry stop, and the majority has failed to prove any nexus, other than but-for causation, between that conduct and the ultimate seizure of the gun. After Gaines assaulted the police officers, the officers lawfully arrested him, and in connection with that arrest, they seized the firearm that fell from Gaines’ waistband. Gaines should now be tried for violating § 922(g)(1).
Accordingly, I respectfully dissent from the majority’s decision effectively letting Gaines go free.